817 A.2d 473

COMMONWEALTH of Pennsylvania, Appellee,

v.

Raymond WHITNEY, Appellant.

Supreme Court of Pennsylvania.

Submitted Nov. 4, 2002.

Decided March 5, 2003.

470

Christina Allison Swarns, Philadelphia, for Raymond Whitney.

Catherine Lynn Marshall, Philadelphia, for Commonwealth of Pennsylvania.

Before: CAPPY, C.J., and CASTILLE, NIGRO, NEWMAN, SAYLOR, EAKIN and LAMB, JJ.

## *OPINION*

Justice NEWMAN.

Raymond Whitney (Appellant) appeals from the Order of the Court of Common Pleas of Philadelphia County (PCRA Court), which dismissed his third Post Conviction Relief Act[1] (PCRA) petition. For the reasons set forth herein, we affirm.

### Facts and Procedural History

On May 4, 1982, a jury found Appellant guilty of murder in the first degree,[2] two counts of burglary,[3] two counts of robbery,[4] two counts of possession of an instrument of crime,[5]

1. 42 Pa.C.S. §§ 9541–9546.
2. 18 Pa.C.S. § 2502(a).
3. 18 Pa.C.S. § 3502.
4. 18 Pa.C.S. § 3701.
5. 18 Pa.C.S. § 907(a).

terroristic threats,[6] indecent assault,[7] and attempted rape.[8] We have previously summarized the criminal episode at the heart of this case as follows:

Shortly before 4:00 A.M. on October 10, 1981, a man gained access to the second floor apartment of Juliana Minor through a window. The man, identified later that night by Ms. Minor as [A]ppellant, came into her bedroom where she lay in bed. Armed with a knife, he threatened to kill her if she wasn't quiet. He asked if she recognized him; she responded that she didn't. He then announced that he was in the "wrong" apartment. Nonetheless, he stole items from her jewelry box, cut her telephone wire, and soon thereafter left through a window onto a ledge.

Moments later [A]ppellant entered the apartment of Jehad Taha and Mahin Murtaza, husband and wife, just two doors away from Ms. Minor's apartment on the same floor. Realizing that someone was in the apartment, Mr. Taha got out of bed and went to the living room to investigate. Mrs. Murtaza heard someone hit her husband and she attempted to contact the police on the bedroom phone. Before she was able to get through she saw her husband at the bedroom door, blood running from his chest and face, with [A]ppellant standing behind him holding a knife to his neck. As Mrs. Murtaza hung up the phone [A]ppellant threw Mr. Taha to the bed and approached Mrs. Murtaza, holding his knife to her chest. Appellant demanded money and jewelry. She gave him jewelry from a candle case; [A]ppellant forcibly removed what jewelry the victims were wearing. He then announced his desire to rape Mrs. Murtaza and tore off her brassiere. Before carrying these intentions further he repeated his demand for money, and was told by Mrs. Murtaza that their money was in the living room in her purse. Appellant ordered Mr. Taha up from the bed and pushed him toward the living room. Still bleeding Mr. Taha headed for the bathroom, at which point [A]ppellant at-

6.  18 Pa.C.S. § 2706.
7.  18 Pa.C.S. § 3126.
8.  18 Pa.C.S. §§ 901, 3121.

tacked and stabbed him again. Appellant forced Mr. Taha into the living room where Mrs. Murtaza emptied the small amount of change in her purse onto the floor. Appellant expressed his disappointment. In a relaxed and "very cool" manner he opened the refrigerator, took out a glass container and drank some water. Then he advanced on Mrs. Murtaza, hugged her, touched her breast and reiterated his intent to have intercourse with her. He struck her and threw her to the floor next to her husband. Mr. Taha protested, but was struck in the face and ordered to put his neck down. Appellant then stabbed him again and repeatedly stated that he was going to kill Mr. Taha and then would rape her. At this point [A]ppellant opened his pants and drew out his penis. Mr. Taha arose and began to scuffle with [A]ppellant; Mrs. Murtaza ran out of the apartment and onto the street where she saw two police officers, Sergeant Wagner and Officer Miller. She directed them to the apartment where the police officers observed [A]ppellant crouched over Mr. Taha pulling a knife out of Taha's chest. Appellant was immediately arrested. Mr. Taha died subsequently as a result of twenty-eight stab wounds to his body.

*Commonwealth v. Whitney*, 511 Pa. 232, 512 A.2d 1152, 1154–55 (1986). On May 7, 1982, the jury sentenced Appellant to death in connection with his first-degree murder conviction.[9] On July 15, 1986, this Court affirmed the Judgment of Sentence. *Id.*

On November 13, 1990, Appellant filed his first PCRA petition. The PCRA Court appointed new counsel for Appellant and held an evidentiary hearing. Thereafter, on January 3, 1995, the PCRA Court denied the first petition and Appellant sought review from this Court. During the pendency of this appeal, Appellant filed his second PCRA petition. On August 4, 1997, the PCRA Court dismissed the second petition without prejudice, due to the pending appeal. This Court affirmed the denial of the first petition on February 26, 1998.

9. Additionally, the trial court sentenced Appellant to be imprisoned for 497.5 months to 995 months on the remaining convictions.

*See Commonwealth v. Whitney,* 550 Pa. 618, 708 A.2d 471 (1998).

On July 24, 1998, Appellant filed his third PCRA petition, alleging that his death sentence was the product of racial discrimination and that, therefore, it violated Pennsylvania's capital sentencing statute, the Pennsylvania Constitution, and the United States Constitution. Appellant argued that the PCRA Court should review his petition, because he satisfied the "newly discovered evidence" exception to the timeliness requirements of the PCRA. *See* 42 Pa.C.S. § 9545(b)(1)(ii) (allowing filing when "the facts upon which the claim is predicated were unknown to the petitioner and could not have been ascertained by the exercise of due diligence"). The Commonwealth moved to dismiss the third petition as untimely.

Even as this third PCRA petition was still pending, on May 6, 1999, Appellant filed a petition for writ of *habeas corpus* in federal court and litigated that writ contemporaneously with his request for relief from Pennsylvania courts. The federal *habeas corpus* writ contained various challenges to Appellant's conviction and sentence, including the claim raised in the third PCRA petition that the death sentence was the product of racial discrimination. Thereafter, Appellant amended the federal *habeas corpus* writ by deleting this claim. On June 7, 1999, the U.S. District Court granted Appellant's writ of *habeas corpus,* finding that the guilt phase instructions on intoxication violated Appellant's due process rights.[10] The Commonwealth appealed that decision to the Third Circuit Court of Appeals. On February 5, 2002, the Third Circuit reversed the decision of the District Court and remanded for further proceedings.[11]

Before the Third Circuit issued its decision regarding Appellant's federal claims, the PCRA Court, citing to our decision in *Commonwealth v. Lark,* 560 Pa. 487, 746 A.2d 585 (2000), dismissed the third PCRA petition on February 13,

**10.** *Whitney v. Horn,* 170 F.Supp.2d 492 (E.D.Pa.2000).

**11.** *Whitney v. Horn,* 280 F.3d 240 (3rd Cir.2002).

2001, finding that it lacked jurisdiction over the PCRA petition, because of the pending *habeas corpus* proceedings in federal court. Appellant sought review with this Court.

### Discussion

In *Lark*, a petitioner filed his second PCRA petition, while an appeal from his first PCRA petition was pending with this Court. *Lark*, 746 A.2d at 586–87. The PCRA Court dismissed the second petition. *Id.* at 587. On appeal, this Court ruled that when a post-conviction appeal is pending before a court, a subsequent post-conviction petition cannot be filed until the resolution of the pending appeal "by the highest state court in which review is sought." *Id.* at 587–88.

In the case *sub judice*, the PCRA Court relied on *Lark* in finding that it lacked jurisdiction to consider Appellant's PCRA petition. However, the federal *habeas corpus* proceedings are not an appeal from any state court proceeding, but an original civil action based in federal court. *See, e.g., Riddle v. Dyche*, 262 U.S. 333, 335–36, 43 S.Ct. 555, 67 L.Ed. 1009 (1923) (stating that "[t]he writ of *habeas corpus* is not a proceeding in the original criminal prosecution but an independent civil suit"); *Ex parte Tom Tong*, 108 U.S. 556, 559–60, 2 S.Ct. 871, 27 L.Ed. 826 (1883). Therefore, *Lark* is factually distinguishable from this case and, consequently, the aforementioned rule is inapplicable where no appeal is pending, but there is only a parallel *habeas corpus* proceeding in federal court. Accordingly, the reasoning advanced by the PCRA Court in support of the finding that it lacked jurisdiction to consider the PCRA petition was not correct.

Nonetheless, because Appellant's third PCRA petition was untimely, we believe that the PCRA Court was correct in holding that it did not have jurisdiction to consider the merits of this petition. The 1996 amendments to the PCRA "mandate that all petitions for post-conviction relief, including second and subsequent petitions, be filed within one year of the date upon which the judgment became final, unless one of three [enumerated] exceptions apply." *Lark*, 746 A.2d at 587. *See also* 42 Pa.C.S. § 9545(b)(1); *Commonwealth v. Peterkin*,

554 Pa. 547, 722 A.2d 638, 641–42 (1998). This Court has described these exceptions as follows:

[A PCRA petitioner] must show that his failure to raise these claims previously was the result of illegal interference by government officials, or that facts upon which his claims rest were unknown and could not have been ascertained with due diligence, or that he is asserting a newly recognized constitutional right, **and** that the petition raising these claims was filed within 60 days of the date the claim could have been presented.

*Commonwealth v. Crawley,* 559 Pa. 9, 739 A.2d 108, 110 (1999) (emphasis in original) (citing 42 Pa.C.S. § 9545(b) throughout). Thus, a PCRA petition filed past this one-year period is deemed untimely, unless the petitioner pleads and proves that one of these exceptions apply. *See Lark,* 746 A.2d at 587; *Commonwealth v. Pursell,* 561 Pa. 214, 749 A.2d 911, 914 (2000) (stating that where the "petition was not timely . . . the courts have no jurisdiction to grant [the petitioner] relief unless he can plead and prove that one of the exceptions to the [PCRA] time bar . . . applies"). Additionally, a petitioner who invokes these exceptions must file his claim "within 60 days of the date the claim could have been presented." 42 Pa.C.S. § 9545(b)(2).

This Court has repeatedly held that the PCRA timeliness requirements are jurisdictional in nature and, accordingly, a PCRA court is precluded from considering untimely PCRA petitions. *See, e.g., Commonwealth v. Murray,* 562 Pa. 1, 753 A.2d 201, 203 (2000) (stating that "given the fact that the PCRA's timeliness requirements are mandatory and jurisdictional in nature, no court may properly disregard or alter them in order to reach the merits of the claims raised in a PCRA petition that is filed in an untimely manner"); *Commonwealth v. Fahy,* 558 Pa. 313, 737 A.2d 214, 220 (1999) (holding that where a petitioner fails to satisfy the PCRA time requirements, this Court has no jurisdiction to entertain the petition). We have also held that even where the PCRA court does not address the applicability of the PCRA timing mandate, this Court will consider the issue *sua sponte,* as it is a

threshold question implicating our subject matter jurisdiction and ability to grant the requested relief. *Pursell,* 749 A.2d at 913–14; *Commonwealth v. Yarris,* 557 Pa. 12, 731 A.2d 581, 589 (1999).

■ In this case, Appellant filed his third PCRA petition long after the PCRA timing mandate expired.[12] However, Appellant argues that he satisfied the second, "newly discovered evidence" exception to the PCRA. *See* 42 Pa.C.S. § 9545(b)(1)(ii). Appellant maintains that the statistical study of the Philadelphia criminal justice system by Professors David Baldus and George Woodworth (the Baldus–Woodworth Study)[13] was this "newly discovered evidence."

Contrary to this position, we have previously held that the Baldus–Woodworth study is not "newly discovered evidence" for purposes of the PCRA, because "the statistics which comprise the study were of public record and cannot be said to have been 'unknown' to Appellant." *Lark,* 746 A.2d at 588 n. 4. Therefore, the argument Appellant raises in asserting that he satisfied the "newly discovered evidence" exception fails. Consequently, because the third PCRA petition filed by Appellant is untimely and does not qualify for any of the exceptions to the timing requirement of the PCRA, the PCRA Court was without jurisdiction to consider its merits. *See, e.g., Murray, supra; Fahy, supra.*

### Conclusion

Accordingly, we affirm the decision of the PCRA Court finding that it lacked jurisdiction to entertain this PCRA petition, because it was untimely, not because of the pending federal *habeas corpus* proceedings.

**12.** Appellant filed his third PCRA petition more than twelve years after this Court affirmed his Judgment of Sentence.

**13.** *See* David Baldus, George Woodworth, et al., *Racial Discrimination and the Death Penalty in the Post–Furman Era: An Empirical and Legal Overview, with Recent Findings from Philadelphia,* 83 Cornell L.Rev. 1638 (1998). Appellant cites the Baldus–Woodworth Study in support of the argument that his conviction was the product of racial discrimination.