870 A.2d 864

**COMMONWEALTH of Pennsylvania, Appellee**

v.

**Robert FISHER, Appellant.**

**No. 451 CAP.**

Supreme Court of Pennsylvania.

Submitted Dec. 13, 2004.

Decided March 30, 2005.

Stuart Brian Lev, for Robert Fisher, appellant.

Amy Zapp, Patricia Eileen Coonahan, for the Com. of PA, appellee.

Before: CAPPY, C.J., CASTILLE, NIGRO, NEWMAN, SAYLOR, EAKIN and BAER, JJ.

## *OPINION*

Justice BAER.

Appellant Robert Fisher appeals from the order of the Court of Common Pleas of Montgomery County dismissing his petition for relief on the merits filed pursuant to the Post–Conviction Relief Act ("PCRA"), 42 Pa.C.S. §§ 9541–9546, without a hearing. As we find the petition was untimely filed, we affirm.

The facts underlying this case are as follows. In the month preceding Linda Rowden's death, her boyfriend, Appellant was angry with her because he believed that she had gone to the police to implicate him in the drug-related murder of a man named Nigel Anderson.[1] Appellant's anger grew over

1. As discussed in detail in our prior decision at *Commonwealth v. Fisher*, 527 Pa. 345, 591 A.2d 710 (1991) (*Fisher I*), police had suspect-

Ms. Rowden's willingness to cooperate with authorities, and in turn, Ms. Rowden complained to the Norristown police that Appellant had assaulted and was harassing her. The police took a report, prepared a complaint against Appellant, and advised him to stay away from her.

Unfortunately, the couple was together one final time on July 10, 1980. According to witnesses, on that date Ms. Rowden was driving her car down Dekalb Street in Montgomery County with Richard Mayo riding in the front passenger seat and Appellant riding in the back seat. It was daylight and the windows of the car were down. Mr. Mayo testified that Appellant and Ms. Rowden were arguing about her cooperation with the police investigation of the Anderson murder case when Appellant leaned forward and shot Ms. Rowden twice with a revolver. Ms. Rowden slumped forward and lost control of the vehicle. The vehicle swerved to the right, and crashed into parked cars lining Dekalb Street. Appellant jumped out of the backseat and walked quickly down a side street with the gun still in his hand. Mr. Mayo immediately got out and yelled for help. He then ran to an emergency phone, and called the police. A subsequent autopsy confirmed that Ms. Rowden died as a result of the shooting.

In the meantime, Appellant fled the scene. He went to the apartment of Denise Walker where he told Ms. Walker that he had just shot Ms. Rowden because she "was running her face to the detectives" about the Anderson murder. Appellant then changed his clothes, told Ms. Walker he was leaving town, and fled the area shortly thereafter. A search of Ms. Walker's apartment uncovered a set of Appellant's clothes and an opened box of Remington–Peters bullets.

Appellant was not apprehended until 1987, when he was found in New York City and extradited to Pennsylvania to stand trial for Ms. Rowden's murder. On September 15, 1988,

ed Appellant in Anderson's death because Anderson was murdered before he had an opportunity to testify against Appellant in a federal drug possession trial. Eventually, Appellant was convicted in federal court of violating Anderson's civil rights; however that conviction was overturned on appeal.

during a jury trial, Mr. Mayo and a number of other eyewitnesses testified to seeing Appellant shoot Ms. Rowden.[2] The jury convicted Appellant of murder in the first degree and, following a penalty-phase hearing, determined that Appellant should be sentenced to death. Post-trial motions were eventually denied, and the trial court formally sentenced Appellant to death on May 3, 1989. As referenced in footnote 1, *supra*, on direct appeal, this Court reversed Appellant's judgment of sentence, holding, among other things, that a question asked during *voir dire* of prospective jurors was prejudicial and mandated the grant of a new trial. *See Fisher I*.

Upon retrial, Mr. Mayo testified that he was seated in the front passenger seat, directly beside Ms. Rowden, who was driving, when he observed Appellant lean forward from the back seat and shoot her. Additionally, Frieda Sambrick testified that she was sitting on the steps of a nursing clinic located approximately 20 to 25 feet from the spot where Ms. Rowden's vehicle crashed. Ms. Sambrick told the jury that she had known Appellant for eleven years, and when she saw Ms. Rowden driving by, she recognized Appellant, who was sitting in the back seat. Ms. Sambrick said she saw Appellant lean forward and she heard the gunshots followed by Ms. Rowden's scream. She then saw the car crash, and watched as Appellant got out of the car and ran from the scene.

Ms. Walker also testified at the retrial. She related that Appellant admitted shooting the victim for talking to the police. She said he changed clothes at her apartment and immediately left. The Commonwealth presented additional evidence to establish that Appellant fled the Norristown area and remained at large until he was apprehended seven years later in New York.

Finally, the Commonwealth introduced ballistics testimony through its expert witness, FBI Agent John Riley. Agent Riley testified that he conducted comparative bullet lead anal-

**2.** We do not review the facts introduced into evidence during Appellant's first trial because we reversed the judgment of sentence and remanded for a new trial. The facts supporting the second jury's verdict are reviewed *infra*.

ysis (CBLA) of eight bullets from the open box of bullets found at Ms. Walker's apartment with the bullet fragments recovered from the victim's body.[3] He concluded that six of the eight bullets found at Ms. Walker's apartment were analytically indistinguishable from the bullets retrieved from Ms. Rowden's body, while the remaining two of the eight tested had minor compositional differences. Agent Riley opined that bullets that are analytically indistinguishable or of close compositional association typically come from the same box of ammunition. He qualified his finding by saying that these bullets could have also come from another box of ammunition, but that box, most likely would have had to be manufactured by Remington Peters and packaged on or about the same date as the box recovered by police in this case. On cross-examination, defense counsel challenged Agent Riley's conclusions and pointed out that other bullets manufactured by Remington Peters and sold in the area had the same composition, raising the possibility that anyone who bought them could equally be associated with the bullets recovered from the victim's body.

At the conclusion of the second trial, a jury again convicted Appellant of murder in the first degree and, following a penalty-phase hearing, determined that Appellant should be sentenced to death. In the direct appeal that followed, Appellant asserted thirty separate issues for review, raising guilt-phase error, as well as penalty-phase error. Addressing each issue, we affirmed the conviction for murder in the first

**3.** Agent Riley testified at trial that he conducted a compositional analysis (CBLA) of the two bullets fragments recovered from the victim and eight bullets randomly selected from the box of ammunition found at Ms. Walker's apartment. CBLA has been used when bullets collected at a crime scene are too fragmented for microscopic comparison with a suspected firearm or in cases in which no firearm has been recovered. The lead fragments are spectrographically analyzed for comparison of trace elements associated with lead smelting with those in ammunition seized from a suspect. Agent Riley explained that he was attempting to compare the elemental composition of the bullets he examined by looking for trace elements in the lead, such as antimony, copper arsenic, silver, tin and bismuth, unique to a particular manufacturer. He opined that these trace elements are even unique to particular batches or boxes of bullets.

degree, but vacated the death sentence and remanded for a new sentencing hearing. *See Commonwealth v. Fisher*, 545 Pa. 233, 681 A.2d 130 (1996) (*Fisher II*) (holding that victim impact evidence is not admissible during the penalty phase of a capital case).[4]

After a new sentencing hearing in which a third jury determined that Appellant should be sentenced to death, the trial court formally sentenced Appellant to death on July 23, 1997. On direct appeal, this Court affirmed the sentence of death. *Commonwealth v. Fisher*, 559 Pa. 558, 741 A.2d 1234 (1999) (*Fisher III*). On February 8, 2000, we denied reargument in *Fisher III*, and on October 2, 2000, the U.S. Supreme Court denied *certiorari*. *See Fisher v. Pennsylvania*, 531 U.S. 829, 121 S.Ct. 81, 148 L.Ed.2d 43 (2000).

While the direct appeal in *Fisher III* was pending, Appellant filed his first PCRA petition, alleging ineffective assistance of counsel.[5] The trial court appointed new counsel, who filed post-sentence motions, as well as an amended PCRA petition. Following an evidentiary hearing, the trial court denied the post-trial motion and dismissed the PCRA petition. In *Fisher III*, we handled Appellant's procedural misstep in filing a PCRA petition during the pendency of his direct appeal by addressing all of the issues Appellant was attempting to raise. *See Fisher III*.

Once Appellant's direct appeal became final, in 2000, he filed a second PCRA petition, which was treated as a first petition, raising fourteen issues, none of which are relevant to this

4. In *Fisher II*, we concluded that the death penalty statute in effect at the time of the second trial prohibited victim impact testimony. The statute has since been amended and we have determined that victim impact testimony is permissible with certain limitations. *See Commonwealth v. Means*, 565 Pa. 309, 773 A.2d 143 (2001) (plurality); *see also Commonwealth v. Williams*, 578 Pa. 504, 854 A.2d 440 (2004).

5. In his reply brief, Appellant takes issue with the Commonwealth's characterization of this pleading as a "first" PCRA petition; and instead, claims this pleading was filed on October 30, 2000, pursuant to the "Capital Unitary Review Act," not the PCRA. However, he concedes that this clarification is irrelevant to the particular legal issues raised here, and also concedes that the issues raised therein were addressed in *Fisher III*.

current appeal. The PCRA court appointed new counsel, who filed an amended PCRA petition. Following an evidentiary hearing, the PCRA court dismissed the petition, and on December 31, 2002, this Court affirmed. *Commonwealth v. Fisher*, 572 Pa. 105, 813 A.2d 761 (2002) (*Fisher IV*).

On January 15, 2004, Appellant filed the instant PCRA petition, which alleged newly discovered evidence. Specifically, Appellant claimed that on November 21, 2003, the Associated Press reported that a soon to be released study by the National Academy of Science (NAS) had determined that the methods utilized by the FBI in CBLA cases were imprecise and flawed. In support of his claim, Appellant attached to his PCRA petition an undated article published by the National Academies Press entitled "Forensic Analysis: Weighing Bullet Lead Evidence." *See* Exhibit 2 attached to Appellant's brief.[6,7] Appellant also contended that Agent Riley's CBLA testimony was critical to his conviction and the new study refutes the underlying theory that bullets from the same batch of lead share a common "chemical fingerprint." Appellant, through counsel, retained the services of William A. Tobin, a retired forensic metallurgist from the FBI Laboratory, who stated, in an affidavit dated January 13, 2004, which he attached to his Appellate brief as Exhibit 3, that the expert

---

**6.** While Petitioner attaches a copy of the article to his brief, he also advises that a copy of this article can be downloaded from an internet website found at http://books.nap.edu/html/forensic—analysis/report-brief.pdf.

**7.** There is no mention in the article cited above that "the methods utilized by the FBI in CBLA cases were imprecise and flawed," instead, "the report finds that the technique the FBI uses for chemical analysis ... are accurate and reliable." It also states that "Although the report concludes that [the FBI technique] is currently the best available technology for the job, it also recommends that the FBI evaluate a new variant called "high performance" ICP–OES, which might allow even better differentiation among samples." Finally, the article ends with the statement:

> The report concludes that, in many cases CBLA is a reasonably accurate way of determining whether two bullets came from the same compositionally indistinguishable volume of lead. Thus, in appropriate cases, CBLA may provide additional evidence that ties a suspect to a crime, or in some cases evidence that tends to exonerate a suspect. The value and reliability of CBLA can be enhanced if the recommendations of this report are implemented.

opinion offered by Agent Riley at trial was not scientifically reliable and that there is no meaningful or comprehensive scientific research or study validating the premises required to support the practice of CBLA. *Id.* at Exhibit 3.[8]

On April 21, 2004, the Commonwealth filed an Answer to the PCRA petition, alleging that the petition was untimely and did not fit within any of the exception to the timeliness requirements of the PCRA, pursuant to 42 Pa.C.S. § 9545(b)(1) (as set forth fully below). On May 3, 2004, Appellant filed a Reply, along with a Motion for Discovery.[9] That same date, the PCRA court issued an order and opinion dismissing the PCRA. The PCRA court initially found that the petition was timely filed. It recognized that the study, which Appellant was relying on, was published in late November of 2003, and his petition was filed in January of 2004 (within 60 days). It opined that the information on which Appellant's claim is based could not have been known to him previously; thus, his current PCRA petition fell within the exception established in Section 9545(b)(1)(ii) (as set forth fully below). However, the PCRA court further determined that because Appellant's new evidence would not have resulted in a different outcome, even if presented, Appellant was not entitled to substantive relief pursuant to the PCRA. Specifically, the PCRA court found that Appellant's new evidence calling into question the accuracy of Agent Riley's testimony would not have been sufficient to acquit Appellant; accordingly, it concluded that Appellant was not entitled to a new trial, and dismissed his petition on the merits. Appellant appealed to

8. As the Commonwealth astutely points out, Appellant attached Tobin's *curriculum vitae* to his PCRA petition, but did not include it in his appellate brief to this Court. The Commonwealth also points out that according to the list of publications included with his *curriculum vitae*, Tobin has done research into CBLA since 2002, and therefore, the theories he asserts therein have been available and discoverable by Appellant for more than two years.

9. In his Motion for Discovery, Appellant sought the FBI test data, including but not limited to, all laboratory notes and report, memoranda, original test data, computer printouts from the Neutron Activation Analysis and Inductively Conducted Plasma tests, statistical analyses, and/or applied statistical standards pertinent to the CBLA.

this Court, which has jurisdiction to directly review collateral appeals in capital cases pursuant to 42 Pa.C.S. § 9546(d).

■ Before we can review the PCRA court's merits analysis of Appellant's claim, we must ascertain whether we have jurisdiction over the PCRA petition.[10] Pursuant to the PCRA, a PCRA petition must be filed within one year of the date that the petitioner's judgment of sentence becomes final. 42 Pa. C.S. § 9545(b)(1). A judgment becomes final for purposes of the PCRA "at the conclusion of direct review, including discretionary review in the Supreme Court of the United States and the Supreme Court of Pennsylvania, or at the expiration of time for seeking review." 42 Pa.C.S. § 9545(b)(3). If a PCRA petition is untimely, this Court has no jurisdiction over the petition. *Commonwealth v. Murray*, 562 Pa. 1, 753 A.2d 201, 202–203 (2000). Without jurisdiction, we simply do not have the legal authority to address substantive claims.

As noted above, Appellant's judgment of sentence became final after the U.S. Supreme Court denied *certiorari* on October 2, 2000. Appellant filed the instant petition on January 15, 2004. Thus, it is obvious that Appellant did not file this PCRA petition within one year of the date that his judgment became final. *See* 42 Pa.C.S. § 9545(b)(1). Nonetheless, Appellant's petition may be considered if it fits within one of the three exceptions to the PCRA's timeliness requirements as

10. Appellant raises three questions for review. He claims (1) that he was convicted on the basis of inaccurate and unreliable expert scientific testimony, in violation of his right to due process and his rights under the Eighth and Fourteenth Amendments and the PCRA Court erred in concluding that any error was harmless, (2) that he is entitled to a new trial based on newly-discovered evidence that Agent Riley's expert forensic testimony relative to CBLA is scientifically unreliable and (3) that the court below erred in its actions, ruling and treatment of this case, including its rulings denying Appellant's requests for discovery and an evidentiary hearing. However, we are without jurisdiction to reach the merits of his appeal unless the Court has jurisdiction to review Appellant's petition, and such jurisdiction does not exist when Appellant's petition is untimely and fails to satisfy one of the exceptions to the PCRA timeliness requirements. *Commonwealth v. Fahy*, 558 Pa. 313, 737 A.2d 214, 223 (1999); *Commonwealth v. Peterkin*, 554 Pa. 547, 722 A.2d 638, 642 (1998).

elucidated in Section 9545(b)(1) of the PCRA. That Section provides:

Any petition under this subchapter, including a second or subsequent petition, shall be filed within one year of the date the judgment becomes final, unless the petition alleges and the petitioner proves that:

(i) the failure to raise the claim previously was the result of interference by government officials with the presentation of the claim in violation of the Constitution or laws of this Commonwealth or the Constitution or laws of the United States;

(ii) the facts upon which the claim is predicated were unknown to the petitioner and could not have been ascertained by the exercise of due diligence; or

(iii) the right asserted is a constitutional right that was recognized by the Supreme Court of the United States or the Supreme Court of Pennsylvania after the time period provided in this section and has been held to apply retroactively.

42 Pa.C.S. § 9545(b)(1). Any petition invoking one or more of these exceptions must be filed within 60 days from the date that the claim could have been presented. *See* 42 Pa.C.S. § 9545(b)(2).

▮▮▮ Although the PCRA court found that this petition fell within the "newly-discovered evidence" exception, 42 Pa. C.S. § 9545(b)(1)(ii), to the timeliness requirements, upon review, we disagree.[11] As noted above, Appellant's petition will not be considered timely unless his petition alleges and Appellant proves "that the facts upon which the claim is predicated were unknown to the petitioner and could not have been ascertained by the exercise of due diligence." 42 Pa.C.S. § 9545(b)(1)(ii). Appellant argued to the PCRA court that the

11. Nevertheless, as discussed *infra,* we affirm the trial court; albeit on alternative grounds. "A ruling or decision of a lower court will be affirmed if it can be supported on any basis despite the lower court's assignment of a wrong reason." *Commonwealth v. Terry,* 513 Pa. 381, 521 A.2d 398, 409 (1987) (citing *Sherwood v. Elgart,* 383 Pa. 110, 117 A.2d 899 (Pa.1955)).

NAS report conclusively demonstrates that the testimony of Agent Riley, the Commonwealth's expert witness, went far beyond the bounds of scientific reliability when he linked the bullets recovered from the victim's body to a box of bullets Appellant left in Ms. Walker's apartment. Appellant attached an article published by the National Academies Press and an affidavit by William Tobin, to support his claim. Because the article appeared in November of 2003 and the PCRA petition was filed on January 13, 2004, within 60 days thereof, the PCRA court simply concluded that Appellant's claim met the jurisdictional requirements of the PCRA. However, the article which Appellant claims provides a basis for his "newly discovered claim," does not support his contention.

Contrary to Appellant's assertions, the National Academies Press article calls the technique the FBI uses for chemical analysis in CBLA cases accurate and reliable. Specifically, the article states that the FBI technique is the best currently available technology for analyzing bullet fragments, while making suggestions for even more precise results. The article concludes that CBLA is a reasonably accurate way of determining whether two bullets came from the same compositionally indistinguishable volume of lead, although it states that the value and reliability of CBLA can be enhanced further if the report's recommendations are implemented.

This language hardly supports Appellant's claim that the NAS study establishes that the methods utilized by the FBI in CBLA cases were "imprecise and flawed." Thus, although we agree with the PCRA court to the extent that this information only became available to Petitioner in November of 2003 when it was reported, it does not provide a basis upon which he can predicate an untimely claim because the study does not support Appellant's contention that the methods utilized by Agent Riley (and the FBI in general) were so imprecise and flawed as to render Agent Riley's expert opinion unreliable.

■ Likewise, we find fault with Appellant's use of Mr. Tobin's affidavit as a basis for overcoming the jurisdictional time requirements of the PCRA. Although Mr. Tobin offered

his affidavit on January 13, 2004, and it facially appears to provide new information, Mr. Tobin states therein that he began his research into whether there was any meaningful or comprehensive scientific research or studies that could validate the premises supporting CBLA in March of 1998. According to his list of publications attached to his *curriculum vitae*, which Appellant attached to the affidavit filed with the PCRA court, Mr. Tobin has authored articles concerning his position regarding of CBLA since 2002. Therefore, Mr. Tobin's views as set forth in his January 2004 affidavit do not meet the newly discovered evidence exception to the timeliness requirements of the PCRA as the information they contain has been available and discoverable for more than two years. Accordingly, we disagree with the PCRA court's finding that this petition falls within the "newly-discovered evidence" exception, 42 Pa.C.S. § 9545(b)(1)(ii), to the PCRA timeliness requirements.

Although we find that the PCRA court erred in finding that it had jurisdiction to entertain Appellant's petition on the merits, even assuming the petition was timely, we agree with the PCRA court that Appellant would not be entitled to relief pursuant to Section 9543(a)(2)(vi) of the PCRA which provides:

(a) General rule.—To be eligible for relief under this subchapter, the petitioner must plead and prove by a preponderance of the evidence all of the following:

* * *

(2) That the conviction or sentence resulted from one or more of the following:

* * *

(vi) The unavailability at the time of trial of exculpatory evidence that has subsequently become available and would have changed the outcome of the trial if it had been introduced.

42 Pa.C.S. § 9543(a)(2)(vi).

Most recently in *Commonwealth v. D'Amato*, 856 A.2d 806 (Pa.2004), we set forth the criteria for newly-discovered evidence that would warrant PCRA relief on substantive

grounds. In order to obtain relief under the PCRA on substantive grounds conditioned upon newly-discovered evidence, a defendant must establish, by a preponderance of the evidence, *inter alia,* that such evidence would likely compel a different verdict. *D'Amato* at 823.

Clearly, Appellant is unable to establish that such evidence would likely compel a different verdict. Appellant's argument that Agent Riley's CBLA testimony was critical to his conviction vastly overstates its importance at trial. As noted above, Richard Mayo watched in the car as Appellant shot Ms. Rowden twice at close range. Ms. Sambrick, who knew Appellant for eleven years, also testified that she watched from the street as Appellant did the shooting. Additionally, Ms. Walker testified that Appellant confessed to her that he killed Ms. Rowden, and she provided a compelling motive because Appellant complained to Ms. Walker that Ms. Rowden "was running her face to the detectives" about the Anderson murder.

The CBLA evidence, at best, established a possible connection between Appellant and the bullets recovered from the victim's body. Such testimony suggests that a factfinder may have inferred that bullets recovered at a crime scene are traceable to a particular source much like the comparative analysis used in matching soil samples or conducting fiber analysis. As noted above, however, defense counsel was successful in having Agent Riley admit that any number of bullets could match those recovered from the victim. Thus, even if Appellant could have completely discredited the CBLA theory, and Appellant could have proven that the bullets recovered from the victim's body did not come from the box of ammunition found in Ms. Walker's apartment, it is still uncontroverted that the victim died as a result of two bullet wounds inflicted by Appellant. Appellant could have gotten the ammunition from anywhere. Thus, discrediting the Commonwealth's expert witness with new criticism of his scientific technique does not exculpate Appellant. *See Commonwealth v. Abdul–Salaam,* 571 Pa. 219, 812 A.2d 497 (2002) (rejecting an after-discovered evidence claim where petitioner challenged the

adequacy of fingerprint evidence with recent disclosures that undermined the reliability and admissibility of fingerprint evidence because there was overwhelming evidence inculpating petitioner and he was unable to show that the evidence would alter the outcome of the trial). Accordingly, even if Appellant had met the procedural timeliness requirements of the PCRA, substantively Appellant's claim fails.

In sum, we conclude that Appellant's PCRA petition was untimely and did not meet any of the exceptions to the PCRA timeliness requirements. We therefore affirm the order of the PCRA court dismissing the instant petition. The Prothonotary of the Supreme Court is directed to transmit the complete record of this case to the Governor. 42 Pa.C.S. § 9711(i).

Chief Justice CAPPY files a Concurring Opinion in which Justice NIGRO and Justice NEWMAN join.

Chief Justice CAPPY concurring.

I join the Majority Opinion in all respects save for its treatment of the study by the National Academies of Science ("NAS"). It was improper for the Majority to engage in a merits analysis of the NAS study in order to dismiss it as untimely. Upon my review of the Appellant's brief, the Tobin affidavit, and the NAS study, I cannot accept Appellant's position that the NAS study constitutes "newly-discovered" evidence. Information upon which the NAS study relies had been in existence far in advance of Appellant's instant PCRA petition and therefore, the NAS study does not constitute after-discovered evidence. *Cf. Commonwealth v. Whitney*, 572 Pa. 468, 817 A.2d 473, 476 (2003)(finding study of the Philadelphia criminal justice system by Professors David Baldus and George Woodworth was not newly-discovered evidence because the information upon which it relied existed at the time for Appellant to file a timely PCRA petition).

Consequently, because Appellants PCRA petition was untimely on its face and does not qualify for the newly-discovered evidence exception to the timing requirement of the PCRA,

we are without jurisdiction to consider the merits of either the study or Appellants claims. *Commonwealth v. Crews,* 863 A.2d 498, 501 (Pa.2004)(stating that a PCRA court lacks jurisdiction to address claims in an untimely petition). The Majority Opinion's views on the NAS study (Op. at 286–89, 870 A.2d at 870–71) and whether Appellant could be entitled to relief (Op. at 287–90, 870 A.2d at 871–72), in the absence of jurisdiction to do so, render these statements mere *dicta.* In these respects, I respectfully cannot join the Majority Opinion.

Justice NIGRO and Justice NEWMAN join this concurring opinion.