J-S66012-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| DAVID STANLEY JORDAN, | |
| Appellant | No. 1981 WDA 2014 |

Appeal from the PCRA Order of November 12, 2014
In the Court of Common Pleas of Allegheny County
Criminal Division at No(s): CP-02-CR-0015182-2005

BEFORE:  OLSON, STABILE and STRASSBURGER,* JJ.

MEMORANDUM BY OLSON, J.:                    **FILED JANUARY 06, 2016**

Appellant, David Stanley Jordan, appeals from the order entered on November 12, 2014 denying his second petition filed pursuant to the Post-Conviction Relief Act ("PCRA"), 42 Pa.C.S.A. § 9541-9546.  We affirm.

This Court previously set forth the factual background of this case as follows:

> Tanail Lee Boyd a/k/a "Lee" (hereinafter "Lee") testified that prior to September 19, 2005, she knew [Appellant] as a result of time spent at a house on Tioga Street.  Lee further testified that as a former drug addict she had frequented the Tioga Street house, that it was a place to "use drugs," and that she had seen [Appellant] in the house.  Lee stated that prior to September 19, 2005, she had refused [Appellant]'s offers for a ride. Notwithstanding the same, on the night of September 19, 2005, the victim Eddie Williams a/k/a "Baltimore" (hereinafter "Williams[]") and [Appellant] reached an agreement whereby [Appellant] would drive [Lee and Williams] to Lowe's in exchange for a fee of $50.00.  Lee further testified that they were going to Lowe's to use a stolen/forged check to buy goods,

* Retired Senior Judge assigned to the Superior Court

which in turn would be sold to get money to buy drugs and to pay [Appellant], either with cash, drugs[,] or both. During the return trip from Monroeville, Lee stated that [Appellant] and Williams[] "off and on, had little arguments all the way there and back;" that they argued "about money, making sure, you know, don't play any games;" that [Appellant] "wants to get paid, and [] he didn't want any games;" and that "they were arguing outside on Tioga about money you still haven't given me nothing." After purchasing a DeWalt drill set, the trio returned to Homewood, but problems arose and Lee was unable to immediately sell the drill set. To reassure [Appellant] that he would "get paid," Lee obtained drugs on credit and the trio then returned to the house on Tioga Street where the drugs were shared with [Williams] and [Appellant]. Lee testified that she witnessed [Appellant] use crack cocaine. . . . Lee testified that she was eventually able to sell the DeWalt drill set and used the money to buy cigarettes and more drugs, which she again shared with [Appellant]. At some point during the night, the parties reached some understanding that the drugs were supposed to offset some, if not all, of the first jitney fare.

The next morning, a second trip was made, again to purchase goods to sell for drugs and/or cash, at an agreed price of an additional $50.00. Unsuccessful at Lowe's, the trio proceeded to Burlington, where Lee was able to purchase goods and a gift card. The trio then drove to a house on Shetland Avenue so that Lee could sell the gift card. While Lee was completing the sale, [Appellant] exited the vehicle [and] approached Lee and the buyer. [Appellant] had a conversation with the buyer, again, about money. Lee testified that [Appellant] appeared upset by the conversation. Nevertheless, after completing the sale, [Appellant] and Lee returned to the vehicle at which time [Appellant] began to holler and make repeated demands for payment from Lee. Lee testified that [Appellant] reached over [Williams] and grabbed a black case. Lee further testified that [Appellant] exited the vehicle and walked around to [Williams]' door and punched [Williams] on the left side of his face. Lee then bent down to look for money and when she looked up saw [Appellant] approaching the vehicle, [Williams] fall forward[,] and hit his head.

Stephanie Ray Johnson testified that in September 2005, she had been staying at the house on Tioga Street, a known crack house, and that she was familiar with [Appellant] through their

"using drugs." . . . Johnson further testified that [Appellant] stated that he was "going to get my money one way or the other," that [Williams] owed him money; that [Appellant] felt cheated; and, that as time progressed [Appellant] became more irritated with Lee and [Williams], about money.

At trial, Appellant testified in his own defense. The theory of the defense was that this was essentially a case of self-defense. Thus, Appellant testified that immediately prior to the stabbing, he alighted from the vehicle, and when he did, a sheathed knife fell out of the door pocket where it was stored. Appellant then picked up the knife and placed it in his pocket. According to Appellant, he then confronted Lee in an effort to receive payment for the jitney services and while he was demanding that Lee pay him, [Williams] charged Appellant.

During the ensuing altercation, Appellant testified that [Williams] went for the knife and that Appellant then reached for it. Appellant admitted that he gained control of the knife during the altercation and that he "may have stabbed [him.]" Testimony at trial showed that the victim died from a deep stab wound in the chest.

*Commonwealth v. Jordan*, 965 A.2d 296 (Pa. Super. Dec. 9, 2008) (unpublished memorandum), at 1-4 (internal citations, alteration, and ellipses omitted).

Appellant was charged via criminal information with one count of homicide.[1] At the conclusion of a non-jury trial, Appellant was found guilty of third-degree murder[2] and was sentenced to 15 to 40 years' imprisonment. Appellant filed a direct appeal and this Court affirmed his judgment of

---

[1] 18 Pa.C.S.A. § 2501.

[2] 18 Pa.C.S.A. § 2502(c).

- 3 -

sentence on December 9, 2008. Appellant did not seek further direct review of his judgment of sentence.

Appellant filed a timely *pro se* PCRA petition. Counsel was appointed and several amended petitions were subsequently filed on his behalf. Included within two of those amended petitions was a claim that trial counsel was ineffective for failing to call an expert witness to counter the Commonwealth's expert. Appellant sought funds during his first PCRA proceeding to hire an expert witness to provide testimony that would establish the stabbing was in self-defense. The PCRA court, however, did not provide the funds. Appellant subsequently proceeded on a claim that trial counsel was ineffective for failing to properly cross-examine Lee. Eventually, the PCRA court held an evidentiary hearing on this sole claim and denied relief. ***See generally Commonwealth v. Jordan***, 38 A.3d 929 (Pa. Super. Nov. 22, 2011) (unpublished memorandum), at 1-2, *appeal denied*, 40 A.3d 1234 (Pa. 2012). This Court affirmed the PCRA court's ruling and our Supreme Court denied allowance of appeal.

Appellant subsequently filed a *pro se habeas corpus* petition in the United States District Court for the Western District of Pennsylvania. The Federal Public Defender for the Western District of Pennsylvania was appointed to represent Appellant in his *habeas* proceeding. That action was later stayed to permit Appellant to proceed with the instant PCRA petition. ***Jordan v. Capozza***, 2:13-cv-74 (W.D. Pa. Apr. 8, 2014).

Appellant's federally appointed counsel hired Dr. Charles Wetli, a forensics pathologist, to review Appellant's case. On April 1, 2014, Dr. Wetli issued his report. Thereafter, on May 28, 2014, Appellant, through the Federal Public Defender for the Western District of Pennsylvania, filed this, his second, PCRA petition.[3] Appellant argued that he was denied effective assistance of counsel because trial counsel failed to hire an expert witness to determine whether he killed Williams in self-defense. The PCRA court held evidentiary hearings on September 30 and October 22, 2014. On November 12, 2014, the PCRA court denied the petition after determining that it was untimely.

Appellant presents two issues for our review:

1. Where [Appellant] is incarcerated, indigent, and at the mercy of the courts to appoint an expert and where the courts refused to grant [Appellant]'s repeated requests for a forensics expert during the timely filed PCRA proceedings, has [Appellant] established that the evidence a recently retained forensic expert provided was both (i) unknown to him and (ii) unable to be ascertained by the exercise of due diligence, within the meaning of 42 Pa.C.S.A. § 9545(b)(1)(ii)?

2. Where [Appellant] is incarcerated, indigent, and at the mercy of the courts to appoint an expert and where the courts refused to grant [Appellant]'s repeated requests for a forensics expert during the timely filed PCRA proceedings, although it was clear that expert assistance was reasonably

---

[3] In **In re Commonwealth's Motion to Appoint Counsel Against or Directed to Def. Ass'n of Phila.**, 790 F.3d 457 (3d Cir. 2015), the United States Court of Appeals for the Third Circuit held that federal law preempted the Commonwealth's attempt to have federal public defenders removed as counsel in PCRA proceedings.

necessary to the preparation and presentation of [Appellant's] claims, has [Appellant] established that government officials interfered with the timely presentation of his claims, within the meaning of 42 Pa.C.S.A. § 9545(b)(1)(i)?

Appellant's Brief at 3.

"Crucial to the determination of any PCRA appeal is the timeliness of the underlying petition. Thus, we must first determine whether the instant PCRA petition was timely filed." *Commonwealth v. Smith*, 35 A.3d 766, 768 (Pa. Super. 2011), *appeal denied*, 53 A.3d 757 (Pa. 2012). The timeliness requirement for PCRA petitions "is mandatory and jurisdictional in nature, and the court may not ignore it in order to reach the merits of the petition." *Commonwealth v. Hernandez*, 79 A.3d 649, 651 (Pa. Super. 2013) (citation omitted). "The question of whether a petition is timely raises a question of law. Where the petitioner raises questions of law, our standard of review is *de novo* and our scope of review plenary." *Commonwealth v. Taylor*, 65 A.3d 462, 468 (Pa. Super. 2013) (citations omitted).

A PCRA petition is timely if it is "filed within one year of the date the judgment [of sentence] becomes final." 42 Pa.C.S.A. § 9545(b)(1). "[A] judgment becomes final at the conclusion of direct review, including discretionary review in the Supreme Court of the United States and the Supreme Court of Pennsylvania, or at the expiration of time for seeking the review." 42 Pa.C.S.A. § 9545(b)(3). As Appellant did not seek allowance of appeal on direct review, Appellant's judgment became final on January 8, 2009, 30 days after this Court's December 9, 2008 decision affirming his

judgment of sentence. Appellant's present petition, his second, was filed on May 28, 2014. Thus, the petition was patently untimely.

An untimely PCRA petition may be considered if one of the following three exceptions applies:

> (i) the failure to raise the claim previously was the result of interference by government officials with the presentation of the claim in violation of the Constitution or laws of this Commonwealth or the Constitution or laws of the United States;

> (ii) the facts upon which the claim is predicated were unknown to the petitioner and could not have been ascertained by the exercise of due diligence; or

> (iii) the right asserted is a constitutional right that was recognized by the Supreme Court of the United States or the Supreme Court of Pennsylvania after the time period provided in this section and has been held by that court to apply retroactively.

42 Pa.C.S.A. § 9545(b)(1)(i-iii). If an exception applies, a PCRA petition may be considered if it is filed "within 60 days of the date the claim could have been presented." 42 Pa.C.S.A. § 9545(b)(2).

Appellant first argues that he satisfied the newly-discovered fact exception to the PCRA's timeliness requirement. Specifically, Appellant argues that Dr. Wetli's April 1, 2014 expert report was a newly-discovered fact that proved his trial counsel was ineffective for failing to hire and call an expert witness to rebut Commonwealth expert Dr. Bennet Omalu's testimony. Appellant further contends that because he filed this, his second, PCRA petition within 60 days of Dr. Wetli's report that his petition satisfied the newly-discovered fact exception. In order to satisfy this exception,

Appellant must plead and prove that "1) the discovery of an unknown fact; 2) the fact could not have been learned by the exercise of due diligence; and 3) the petition for relief was filed within 60 days of the date that the claim could have been presented." *Smith*, 35 A.3d at 771.

We conclude that Appellant failed to plead and prove that Dr. Wetli's expert report was an unknown fact for purposes of the PCRA's timeliness exceptions. In *Commonwealth v. Cross*, 726 A.2d 333 (Pa. 1999), our Supreme Court considered whether an expert's changed opinion was an unknown fact for the purposes of section 9545(b)(1)(ii). It held that such a change of opinion was not an unknown fact. *Id.* at 335-336.

Two years later, our Supreme Court extended *Cross* and held that, generally, a new opinion does not constitute an unknown fact for the purposes of the PCRA's newly-discovered fact exception. Specifically, our Supreme Court stated that, "Certainly, in keeping with the rationale of *Cross*, a completely new opinion uncovered after trial would also not be recognized as [a newly-discovered fact]." *Commonwealth v. Gamboa-Taylor*, 753 A.2d 780, 786 (Pa. 2000).

Appellant cites *Commonwealth v. Fisher*, 870 A.2d 864 (Pa. 2005), in support of his argument that a new opinion can be deemed an unknown

fact for the purposes of section 9545(b)(1)(ii).[4] ***Fisher***, however, supports our conclusion that Dr. Wetli's opinion cannot be an unknown fact under the specific facts of this case. In ***Fisher***, our Supreme Court held that an expert's affidavit was insufficient to invoke the newly-discovered fact exception to the PCRA's timeliness requirement. ***Id.*** at 871. Our Supreme Court focused on the dates that new scientific research had begun and when the results of such research had been published. ***Id.***

---

[4] Appellant relies upon the Commonwealth's briefs filed in several cases, *inter alia*, ***Fisher***, as evidence that an expert opinion can be an unknown fact. ***See*** Appellant's Reply Brief at 2. This reliance, however, is misplaced. As noted above, whether a petition is timely, and whether a petitioner has satisfied a timeliness exception, implicates the subject matter jurisdiction of the PCRA court. Thus, even assuming *arguendo* that the Commonwealth conceded in certain cases that an expert's opinion was an unknown fact, we have an independent duty to ensure that the PCRA court possessed subject matter jurisdiction. The Commonwealth also relies upon our Supreme Court's lack of discussion in several cases of whether an expert opinion can be an unknown fact. ***See id.*** In each of those cases, however, our Supreme Court rejected the petitioner's claim that he had satisfied the newly-discovered fact exception. If a petitioner fails to satisfy any of the three requirements of the newly-discovered fact exception, the PCRA court, and thus the appellate court charged with reviewing that decision, lack subject matter jurisdiction over the case. It is unnecessary for our Supreme Court to note if the petitioner failed to satisfy more than one of the elements of the newly-discovered fact exception. Appellant does not cite to a single case, and we are aware of none, where our Supreme Court or this Court explicitly stated that a new expert opinion constituted an unknown fact when all of the facts and scientific bases for the expert's opinion were known at the time of trial. Indeed, such a conclusion would jettison the concept of finality from our criminal jurisprudence. If expert opinions, standing alone, satisfied the newly-discovered fact exception, then nothing would stop an unsuccessful and out-of-time PCRA petitioner from filing serial petitions that invoke the timeliness exception found at section 9545(b)(1)(ii) based upon new opinions proffered by recently-retained experts.

The same thing occurred in **Commonwealth v. Edminston**, 65 A.3d 339 (Pa. 2013). In **Edminston**, our Supreme Court rejected the petitioner's claim that he satisfied the newly-discovered fact exception because the new scientific research relied upon by the expert was available for several years prior to the petitioner filing his untimely PCRA petition. **Id.** at 352.

Read together, **Cross**, **Gamboa-Taylor**, **Fisher**, and **Edminston** indicate that a new opinion offered after trial may be considered an unknown fact only where a new scientific technique becomes available after trial and an expert bases his opinion on that new scientific technique. Similarly, if an expert's opinion is based upon a fact which was unknown at the time of trial it may qualify as an unknown fact. For example, if the murder weapon is found after the trial and the expert's opinion is based upon the newly-discovered murder weapon, a petitioner would have a colorable argument that the expert's opinion was an unknown fact.

In this case, all of the facts upon which Dr. Wetli's April 1, 2014 expert report was based were known at the time of trial. There were no new facts discovered which formed the basis of Dr. Wetli's expert report. **See** Appellant's Brief at 28-31 (setting forth Dr. Wetli's findings and the factual basis thereof, all of which came from the trial record). Likewise, Dr. Wetli's expert opinion is not based upon new scientific research which became available after Appellant's trial. Instead, all of the facts and scientific knowledge upon which Dr. Wetli's report were based were known at the time

of trial. Accordingly, Dr. Wetli's expert opinion does not qualify as an unknown fact for the purposes of section 9545(b)(1)(ii). As such, Appellant failed to satisfy the newly-discovered fact exception to the PCRA's timeliness requirement.

Appellant next argues that his petition satisfies the governmental interference timeliness exception. He argues that the PCRA court interfered with his rights by refusing to appoint an expert witness during the pendency of his first, timely PCRA petition. He argues that because he is indigent and could not afford an expert during the first PCRA proceedings, the denial of his request for an expert was governmental interference. Appellant further argues that this Court's decision not to expressly address the PCRA court's decision not to appoint an expert witness constituted governmental interference.

Although actions by courts, court personnel, district attorneys, and defense counsel generally cannot be the basis for a governmental interference claim, Appellant is correct that in limited circumstances a court's action (or inaction) can be considered governmental interference. **See Commonwealth v. Blackwell**, 936 A.2d 497 (Pa. Super. 2007). In **Blackwell**, the PCRA court incorrectly notified the petitioner that his counsel had withdrawn. **Id.** at 502. In this case, the PCRA court did not mislead the Appellant or give him a false impression of where his request for the

appointment of an expert stood. Instead, the PCRA court acted upon the petition in due course.

This is more similar to another case cited by Appellant, **Commonwealth v. Burton**, 936 A.2d 521 (Pa. Super. 2007). In **Burton**, the PCRA court informed the petitioner that his criminal record would need to be located in order for his PCRA petition to be considered. The petitioner therefore delayed the filing of his PCRA petition because the record had not been found. When he finally filed an untimely PCRA petition, he pled the governmental interference exception. This Court held that the governmental interference exception did not apply because the court's advice was correct. **Id.** at 527. In this case, the PCRA court's ruling was timely conveyed to Appellant. There was nothing legally incorrect, *per se*, about the ruling. Although Appellant argues the ruling was an abuse of discretion, that does not rise to the level of interference by government officials with the presentation of the claim in violation of the laws or constitutions of Pennsylvania or the United States.

As Appellant candidly admits in his brief, the decision on whether to appoint an expert witness is within the sound discretion of the PCRA court. **See** Appellant's Brief at 50-51; **Commonwealth v. Reid**, 99 A.3d 470, 506 (Pa. 2014) (PCRA court did not abuse its discretion by denying petitioner's request for funds to hire an expert witness to prove trial counsel's ineffectiveness). Appellant cites to no authority, and we are likewise

unaware of any authority, holding that a court's denial of a request for appointment of an expert witness constitutes governmental interference. To the contrary, our Supreme Court's statements in similar cases indicate that a PCRA court's refusal to allocate the amount of funds requested for an expert witness does not violate the Pennsylvania or United States constitutions. *See Commonwealth v. Paddy*, 15 A.3d 431, 469-470 (Pa. 2011) ("Appellant seems to suggest that the PCRA court was required to grant him the specific amount of public funds he demanded for expert and investigative services, but he cites no legal authority to support such a claim, and we are aware of none.").

Like the petitioner in *Paddy*, Appellant relies on *Ake v. Oklahoma*, 470 U.S. 68 (1985) to support his argument that he was entitled to an expert during the pendency of his first PCRA petition. *See* Appellant's Brief at 51. As our Supreme Court explained in *Paddy*, however, *Ake* was limited to circumstances where an individual seeks a mental health expert to argue insanity or to rebut arguments related to future dangerousness.[5] *Paddy*, 15 A.3d at 470, *citing* *Commonwealth v. Blakeney*, 946 A.2d 645, 659 (Pa. 2008).

*Paddy* was not the first time our Supreme Court rejected a claim similar to the one presently before us. In *Commonwealth v. Howard*, 788

---

[5] Arguments as to future dangerousness can only be made during the penalty phase.

A.2d 351 (Pa. 2002), the petitioner sought to invoke the governmental interference exception by "claiming that the first PCRA court's failure to disburse [funds for a private investigator] hampered [his] efforts to develop a claim that prior counsel was ineffective for failing to raise mental health claims." *Id.* at 354. Our Supreme Court rejected Howard's argument and held that a lawful court order cannot be considered governmental interference. *Id.* In this case, this Court previously held that the first PCRA court did not err by refusing to appoint an expert witness during the pendency of Appellant's first, timely PCRA petition. Thus, the PCRA court's order was lawful and this lawful act by the PCRA court (and this Court) did not constitute governmental interference for the purposes of the PCRA's timeliness exception.

Appellant argues that there was no court order because the PCRA court did not directly rule on his request for an appointment of an expert witness. The court, however, denied Appellant's first PCRA petition. That order was clearly lawful and thus falls within the purview of **Howard**. Appellant also argues that even if the order denying his first petition was a court order, it was not a proper court order. We, however, are bound by the law of the case, as a previous panel of this Court implicitly held that the PCRA court's order was a proper court order. Thus, Appellant's attempts to distinguish this case from **Howard** are unavailing.

Appellant also relies on Justice Marshall's dissent from denial of *certiorari* in **Johnson v. Oklahoma**, 484 U.S. 878 (1987) (Marshall, J. dissenting). In that dissent, Justice Marshall stated that "when a State brings criminal proceedings against an indigent defendant, it must take steps to ensure that the accused has a meaningful opportunity to present a defense." **Id.** at 879-880. Justice Marshall's dissent, however, dealt with a direct criminal appeal and speaks with respect to preparing a defense at trial. Nowhere in the dissent does he state, or even imply, that the same rules should apply in collateral proceedings like the case at bar.

Appellant argues that the principles outlined in Justice Marshall's dissent in **Johnson** have been extended by Pennsylvania courts to include post-conviction proceedings. In support of this argument, Appellant cites **Commonwealth v. Howard**, 719 A.2d 233 (Pa. 1998) ("**Howard 1998**"). In **Howard 1998**, however, our Supreme Court only noted that PCRA courts have the **ability** to appoint expert witnesses when deemed necessary for the presentation of a petitioner's claim. **Id.** at 241-242. Our Supreme Court did not hold that such appointment was necessary under the Pennsylvania constitution. **See also Commonwealth v. Bell**, 706 A.2d 855, 862 (Pa. Super. 1998).

Furthermore, the lack of funds for an expert witness can be challenged on appeal from the denial of a timely PCRA petition. That is what occurred in this case. In fact, these circumstances explain why Appellant argues that

this Court interfered with his constitutional rights. Although this Court did not directly address Appellant's expert witness claims during the PCRA appeal, that does not mean that this Court improperly interfered with the presentation of any claim. Appellant misunderstands the appellate process. Frequently, this Court, and appellate courts around the nation, only address those issues which they believe deserving of explanation. *See In re D.M.W.*, 86 A.3d 235, 235 (Pa. Super. 2014), *appeal denied*, 97 A.3d 745 (Pa. 2014) ("We have reviewed the remaining issues in light of the facts in the record and the applicable law and find them to be without merit and not warranting discussion in a written decision."); *Commonwealth v. Hook*, 512 A.2d 718, 719 (Pa. Super. 1986). Although this Court failed to explicitly acknowledge that we had considered all of Appellant's remaining arguments, such acknowledgment was implied by affirming the PCRA court's order denying his first PCRA petition. *See In re Felt*, 255 F.3d 220, 225-26 (5th Cir. 2001), *citing **Knotts v. United States***, 893 F.2d 758, 761 (5th Cir. 1990) (appellate court implicitly rejected argument when it was fully briefed and the appellate court affirmed the opinion below); *United States v. Wogan*, 972 F.2d 337 (1st Cir. 1992); *Mirchandani v. United States*, 836 F.2d 1223, 1225 (9th Cir. 1988); *cf. Commonwealth v. Williams*, 69 A.3d 735, 742 (Pa. Super. 2013), *appeal denied*, 83 A.3d 415 (Pa. 2014) (sentencing court can implicitly consider sentencing factors). The decision to affirm the PCRA court's order did not interfere with Appellant's constitutional

rights. As noted above, except in very limited circumstances, there is no constitutional right to expert witnesses in collateral proceedings.

Finally, even if Appellant were able to satisfy one of the exceptions to the PCRA's one-year time-bar, he would be ineligible for relief. In order to be eligible for relief under the PCRA, the allegation of error must not have been previously litigated or waived. 42 Pa.C.S.A. § 9543(a)(3). An issue is previously litigated if "it has been raised and decided in a proceeding collaterally attacking the conviction or sentence." 42 Pa.C.S.A. § 9544(a)(3); **Commonwealth v. Phillips**, 31 A.3d 317, 320 (Pa. Super. 2011) (citation omitted).

In the appeal of the denial of his first PCRA petition, Appellant argued "that trial counsel was ineffective for failing to obtain and call an expert witness to counter the testimony of Commonwealth expert Dr. Bennet Omalu regarding the non-defensive nature of the victim's wounds." **Commonwealth v. Jordan**, 38 A.3d 929 (Pa. Super. Nov. 22, 2011) (unpublished memorandum), at 5. This Court determined that Appellant's argument was without merit. **See id.** at 5-7. Appellant sought leave to appeal this Court's decision and our Supreme Court denied allowance of appeal. Therefore, Appellant's claim of ineffective assistance of counsel has been raised and decided in a previous PCRA proceeding. Thus, the issue of trial counsel's ineffectiveness for failing to call an expert witness to support Appellant's self-defense theory has been previously litigated.

- 17 -

In sum, Appellant's second PCRA petition was untimely on its face. We have carefully considered all of the arguments presented in Appellant's brief with respect to the exceptions to the PCRA's one-year time-bar and find them to be without merit. Appellant failed to satisfy the newly-discovered fact exception or the governmental interference exception to the PCRA's one-year time-bar. As such, the PCRA court correctly determined that it lacked jurisdiction to adjudicate Appellant's second PCRA petition on the merits. Furthermore, even if the PCRA court possessed jurisdiction over Appellant's second PCRA petition, Appellant was ineligible for relief because his claim was previously litigated.

Appellant's application to file reply brief out-of-time granted. Order affirmed.

Judgment Entered.

_____

Joseph D. Seletyn, Esq.
Prothonotary

Date: 1/6/2016