J-A07013-20

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| FRANKLIN LUTHER JACKSON | : | |
| | : | |
| Appellant | : | No. 1693 MDA 2018 |

Appeal from the PCRA Order Entered August 10, 2018
In the Court of Common Pleas of York County Criminal Division at No(s):
CP-67-CR-0005374-2006

BEFORE: OLSON, J., DUBOW, J., and McLAUGHLIN, J.

MEMORANDUM BY OLSON, J.: **FILED: APRIL 30, 2020**

Appellant, Franklin Luther Jackson, appeals from the order entered on August 10, 2018, which denied him relief on his fourth petition filed under the Post Conviction Relief Act ("PCRA"), 42 Pa.C.S.A. §§ 9541-9546. We affirm.

In a previous appeal, we quoted the trial court's thorough recitation of the underlying facts:

> Members of Appellant's group got into a verbal dispute with the members of another group. The next day someone fired a shotgun through the front door of the residence where Appellant and co-defendant [Troy Gellispie] lived on South Queen Street [in York, Pennsylvania]. Appellant suspected that the members of the other group with whom they had a dispute were the perpetrators of this shooting.
>
> The following morning, co-defendant Troy [Gellispie] went out looking for the members of the other group. Gellispie located a member of the other group at a residence located several blocks away on South Queen Street. Gellispie called back to the residence he shared with Appellant to arrange for Appellant and others who were present at Appellant's home

to come to this location with guns to get revenge for the previous night's shooting through their door. Appellant directed the other occupants of the home to obtain their weapons, and proceeded to drive them to a location back in an alley half a block from where co-defendant Gellispie had indicated the other group would be. Appellant gave guns to the other occupants of the vehicle, and directed them to go down the alley to meet with Gellispie.

Appellant and his co-defendant believed that an individual called M–Dot was the one who fired the shotgun through their door. M–Dot was not present with the other group which had been located by co-defendant. However, his brother, Deo Garcia, was seated on the front porch of a residence on South Queen Street. Also present was his sister's husband, [Chris Butler,] who everyone agrees had no involvement in the previous conflicts between the two groups.

When the individuals who were brought to the scene by Appellant met co-defendant [Gellispie], they began shooting at Deo Garcia. Deo Garcia pulled out his own gun and returned the fire. Chris Butler, Deo's sister's husband, attempted to duck behind a parked vehicle. Unfortunately, he was hit right between the eyes by one of the shots and died. The shooters then fled back to the vehicle were Appellant was waiting for them, and Appellant drove them back to his residence. On the way back, one of Appellant's group discarded his weapon. When Appellant and his co-defendant arrived back at their residence, the shooters attempted to conceal their involvement in the shooting by washing their persons, wiping off weapons, etc. Members of the group went back and picked up the weapon which had been discarded and returned to the house where efforts were made to remove any indication that the gun was used in the shooting.

The trial was somewhat complicated by the fact that many of the Commonwealth witnesses gave testimony that was contradictory to their previous statements to the police. The Commonwealth called two individuals who happened to be present at the time of the shooting because they were attempting to buy drugs from Deo Garcia. Because their testimony differed from their earlier statements, they did not aid the Commonwealth's case. The Commonwealth also called at least one witness who was probably one of the

individuals who was in Appellant's car and took part in the shooting. However, the Commonwealth could not prove that at the time of his testimony, and his actual testimony was again detrimental to the Commonwealth's case.

The Commonwealth did have the testimony of Desiree Garcia, the wife of the murder victim, Chris Butler. However, her initial report of the crime attempted to conceal her brother, Deo Garcia's, role in the shooting. Therefore, she described another individual to the police. The police subsequently found the individual she described, but were able to establish that the individual was in jail in Philadelphia at the time of the shooting. Therefore, Desiree Garcia's testimony was flawed by this misdirection of the truth.

Fortunately for the Commonwealth, two witnesses that the Commonwealth originally did not intend to call saved their case. The Commonwealth had not intended to call Deo Garcia because of his extensive criminal record, his probable involvement in the shooting into the co-defendants' residence the night before, and his lack of cooperation with the police investigation. However, when the Commonwealth's other witnesses "went south," the Commonwealth was essentially forced to call Deo Garcia. To the Commonwealth's surprise, he turned out to be an excellent witness, particularly at describing what happened at the scene of the crime when the shooting was occurring. However, even Deo Garcia didn't really involve Appellant in the crime since [Appellant] was not one of the shooters, but had instead remained at a location a half block away where he was not visible to the victims of the shooting.

Shannon Stuart was also charged with homicide in this case. However, he had fled to Georgia prior to the charges being filed, and therefore, he had never been arrested. Fortunately for the Commonwealth, he was picked up in Georgia on the first day of trial. The Commonwealth sent people to interview him in Georgia, and he confessed to his involvement, agreed to testify for the Commonwealth, waived extradition, and was immediately brought back to Pennsylvania. The court then appointed counsel for Shannon Stuart. Counsel worked out a plea agreement with the District Attorney, whereby the charge of first degree murder, which was lodged against

him[,] was dropped, and he agreed to testify for the Commonwealth.

. . .

Stuart then provided the testimony that [demonstrated] Appellant's involvement in the crime. Stuart testified that he was one of the people present at the residence of Appellant and co-defendant Gellispie when Gellispie called and said that he had located the group that had messed with them. Stuart described Appellant as the one who directed the gathering of weapons by the rest of the group and drove them to the alley a half block from where the victim was shot. Stuart also stated that Appellant directed the passengers in the car to take the weapons, proceed down the alley to meet up with Gellispie, and do what they came for. Stuart also described how the shooters fled back to Appellant's car where he was waiting for them. Stuart further described the efforts made to conceal evidence, which he said was directed by Appellant.

The jury [found Appellant guilty of] third degree murder.[1] Sometime after the trial was over, on or about April 16, 2007, the Commonwealth dismissed all charges against Shannon Stuart.

***Commonwealth v. Jackson***, 947 A.2d 1260, 1261-1264 (Pa. Super. 2008) (quotations, citations, corrections, and some capitalization omitted).

On April 30, 2007, the trial court sentenced Appellant to serve a term of 20 to 40 years in prison for his third-degree murder conviction and we affirmed Appellant's judgment of sentence on April 30, 2008. ***See id.***

On April 8, 2009, Appellant filed a timely, *pro se* PCRA petition. Following the appointment of counsel and an evidentiary hearing, the PCRA court denied Appellant's petition on June 30, 2009. We affirmed the PCRA court's order on March 12, 2010 and the Pennsylvania Supreme Court denied

---

[1] 18 Pa.C.S.A. § 2502(c).

Appellant's petition for allowance of appeal on April 7, 2011. **Commonwealth v. Jackson**, 996 A.2d 545 (Pa. Super. 2010) (unpublished memorandum) at 1-5, *appeal denied*, 20 A.3d 1210 (Pa. 2011).

On February 16, 2012, Appellant filed a *pro se* petition for writ of *habeas corpus* (hereinafter "Appellant's Second PCRA Petition") in the court of common pleas, where he claimed that he was unconstitutionally convicted of third-degree murder. **See** Appellant's Second PCRA Petition, 2/16/12, at 1-4. The PCRA court properly considered Appellant's filing to be a second PCRA petition and, on March 5, 2012, the PCRA court dismissed the petition as untimely. PCRA Court Order, 3/5/12, at 1-2.

Appellant filed his third PCRA petition on August 19, 2013. Following the appointment of counsel and a hearing, the PCRA court denied Appellant relief on February 11, 2015. PCRA Court Order, 2/11/15, at 1; PCRA Court Opinion, 2/11/15, at 1-10. This Court affirmed the PCRA court's order on January 12, 2016 and the Pennsylvania Supreme Court denied Appellant's petition for allowance of appeal on June 15, 2016. **Commonwealth v. Jackson**, 136 A.3d 1030 (Pa. Super. 2016) (unpublished memorandum) at 1-13; *appeal denied*, 140 A.3d 12 (Pa. 2016).

On August 29, 2017, Appellant filed the current PCRA petition. The filing constitutes Appellant's fourth petition for post-conviction collateral relief. Within Appellant's petition, Appellant averred and alleged the following:

> 3. On 3/12/07 [Appellant] proceeded to trial for [the] shooting death of Christopher Butler in which he was found guilty in a jury trial for the homicide.

4. About a year and a half after the homicide Joshua [K]oenig was charged also for the murder of Christopher [B]utler in which he plead[ed] guilty to the homicide [unbeknownst] to [Appellant].

5. Sometime in 2017 Mr. Koenig writes a friend of [Appellant's] family and tells them that [Appellant] is in jail for something he had nothing to do with.

6. [Appellant's] family hires Private Investigator at American Detective Agency who [conducted] an interview with Joshua Koenig on 5/8/17. . . .

7. On 7/17/17 [Appellant] received [an] affidavit from American Detective Agency about the interview they conducted with Mr. Koenig. . . .

8. The underlying facts, is that Mr. Koenig told Private Investigator that on 4/15/06 that him, Shannon [S]tuart, and [Appellant's co-defendant, Troy Gellispie,] were involved in the shooting death of Christopher Butler and that [Appellant] is innocent and did not have any involvement in the shooting incident.

9. [Appellant] who has claimed his innocence from the [beginning], also since [Appellant] had no knowledge about Mr. Koenig being charged, or arrested, and plead[ing] guilty, and without this evidence so [undermined] the truth determining process that no reliable adjudication of guilt or innocence could have taken place.

. . .

11. [Appellant] had no idea that Joshua Koenig was ever arrested, or charged and plead[ed] guilty in the shooting death of Christopher Butler due to the fact that he never knew him, and he was released the night of the homicide.

Appellant's Fourth PCRA Petition, 8/29/17, at 11-12.

The PCRA court appointed counsel to represent Appellant and, on June 12 and 27, 2018, the PCRA court held a hearing on Appellant's petition.

During the hearing, Appellant testified that, prior to his trial, he was aware that Joshua Koenig was "the third shooter." N.T. PCRA Hearing, 6/12/18, at 23.

Mr. Koenig also testified during the hearing. Mr. Koenig testified that, on April 13, 2009, he pleaded guilty to third-degree murder and conspiracy to commit aggravated assault in relation to Mr. Butler's shooting and was sentenced to serve an aggregate term of 12 ½ to 25 years in prison for the convictions. N.T. PCRA Hearing, 6/27/18, at 6-7.

Mr. Koenig also testified that, on the morning of the shooting, he was sleeping at Appellant's residence when he was "woken up by [Troy Gellispie] and Shannon Stuart and was told that there was something that happened . . . and we thought someone was shooting at the residence where I was staying at." *Id.* at 8. He testified: "[t]hey woke me up, basically said, look, man, they are down the street, we're going to go down there, if you are coming, come with." *Id.* Mr. Koenig testified that he grabbed his handgun from underneath the couch and walked down the street with Gellispie and Stuart. *Id.* at 8 and 10. He testified:

> [We] walked down the street, it was only a block and a half, it was literally right there. We cut through an alley to the left so we could approach them from the front, and when we approached them from the front I took a position to the right, [Gellispie] to the left, [Stuart] to the middle, and we started, we opened fire on the porch where there was multiple people.

*Id.* at 10.

Mr. Koenig testified that, after the shooting, he returned to Appellant's house; Appellant arrived at the house shortly thereafter with Gellispie and Stuart. Mr. Koenig surmised that Gellispie and Stuart "somehow came in contact with [Appellant while they were running away and] while [Appellant] was at the laundromat." *Id.* at 13. According to Mr. Koenig, "[Appellant] was pissed off. He was screaming at . . . [Gellispie and Stuart and angry at them for] coming to him and getting and basically putting him in the middle of it." *Id.* Mr. Koenig further testified that "not once was [Appellant] ever a part of it, other than at the very end where he came and he was bitching at" Gellispie and Stuart. *Id.* at 16-17.

During cross-examination, the Commonwealth confronted Mr. Koenig with statements that he made to a probation officer, during the preparation of his pre-sentence investigation report. The report declares that Mr. Koenig told the probation officer: Appellant supplied him with the firearm he used in the shooting; after the shooting, he returned the firearm to Appellant at Appellant's residence; and, Appellant disposed of all the firearms after the shooting. *See id.* at 24-25. Mr. Koenig testified that he did not remember making those statements to the probation officer. *See id.*

On August 10, 2018, the PCRA court denied Appellant post-conviction collateral relief. Specifically, the PCRA court concluded that Appellant's petition failed because: 1) it was untimely, as Mr. Koenig's arrest "could have been discovered through the public record and [Appellant] failed to establish that he exercised due diligence [in doing] so;" 2) it was untimely, as Appellant

was aware of the fact that Mr. Koenig was a potential witness before Appellant's own trial; and, 3) even if the petition were timely, Appellant "is not entitled to relief because [Mr. Koenig] was not worthy of belief given his conflicting statements." PCRA Court Order and Opinion, 8/10/18, at 1-17.

Appellant filed a timely notice of appeal. Appellant raises two claims in his brief to this Court:

> [1.] Whether the PCRA court erred by denying [Appellant's] petition . . . as facially untimely[?]
>
> [2.] [Whether] the [PCRA] court erred by denying [Appellant's] petition . . . by finding that Joshua Koenig was incredible in his testimony that [Appellant] was not involved in the shooting of Christopher Butler.

Appellant's Brief at ii (some capitalization omitted).

"As a general proposition, we review a denial of PCRA relief to determine whether the findings of the PCRA court are supported by the record and free of legal error." *Commonwealth v. Eichinger*, 108 A.3d 821, 830 (Pa. 2014).

The PCRA contains a jurisdictional time-bar, which is subject to limited statutory exceptions. This time-bar demands that "any PCRA petition, including a second or subsequent petition, [] be filed within one year of the date that the petitioner's judgment of sentence becomes final, unless [the] petitioner pleads [and] proves that one of the [three] exceptions to the timeliness requirement . . . is applicable." *Commonwealth v. McKeever*, 947 A.2d 782, 785 (Pa. Super. 2008); 42 Pa.C.S.A. § 9545(b). Further, since the time-bar implicates the subject matter jurisdiction of our courts, we are

required to first determine the timeliness of a petition before we are able to consider any of the underlying claims. **Commonwealth v. Yarris**, 731 A.2d 581, 586 (Pa. 1999). Our Supreme Court has explained:

> the PCRA timeliness requirements are jurisdictional in nature and, accordingly, a PCRA court is precluded from considering untimely PCRA petitions. [The Pennsylvania Supreme Court has] also held that even where the PCRA court does not address the applicability of the PCRA timing mandate, th[e court would] consider the issue *sua sponte*, as it is a threshold question implicating our subject matter jurisdiction and ability to grant the requested relief.

**Commonwealth v. Whitney**, 817 A.2d 473, 475-476 (Pa. 2003) (citations omitted). "The question of whether a [PCRA] petition is timely raises a question of law. Where the petitioner raises questions of law, our standard of review is *de novo* and our scope of review plenary." **Commonwealth v. Taylor**, 65 A.3d 462, 468 (Pa. Super. 2013) (citations omitted).

Appellant's judgment of sentence became final in 2008. The PCRA explicitly requires that a petition be filed "within one year of the date the judgment becomes final." 42 Pa.C.S.A. § 9545(b)(1). As such, Appellant's current petition, which was filed on August 29, 2017, is patently untimely and the burden thus fell upon Appellant to plead and prove that one of the enumerated exceptions to the one-year time-bar applied to his case. **See** 42 Pa.C.S.A. § 9545(b)(1); **Commonwealth v. Perrin**, 947 A.2d 1284, 1286 (Pa. Super. 2008) (to properly invoke a statutory exception to the one-year time-bar, the PCRA demands that the petitioner properly plead and prove all required elements of the relied-upon exception).

- 10 -

J-A07013-20

Within Appellant's PCRA petition, Appellant claimed that his petition was timely because it fell within the newly-discovered fact exception to the PCRA's one-year time-bar. The newly-discovered fact exception provides:

(1) Any petition under this subchapter, including a second or subsequent petition, shall be filed within one year of the date the judgment becomes final, unless the petition alleges and the petitioner proves that:

. . .

(ii) the facts upon which the claim is predicated were unknown to the petitioner and could not have been ascertained by the exercise of due diligence[]

. . .

(2) Any petition invoking an exception provided in paragraph (1) shall be filed within 60 days of the date the claim could have been presented.

42 Pa.C.S.A. § 9545(b).[2]

As our Supreme Court has explained:

subsection (b)(1)(ii) has two components, which must be alleged and proved. Namely, the petitioner must establish that: 1) "the facts upon which the claim was predicated were unknown" and (2) "could not have been ascertained by the exercise of due diligence." 42 Pa.C.S. § 9545(b)(1)(ii)(emphasis added). If the petitioner alleges

_____

[2] Effective December 24, 2018, the legislature amended Section 9545(b)(2) to read: "Any petition invoking an exception provided in paragraph (1) shall be filed within one year of the date the claim could have been presented." *See* 42 Pa.C.S.A. § 9545(b)(2) (effective December 24, 2018). However, the amendment to Section 9545(b)(2) only applies to "claims arising on [December] 24, 2017 or thereafter." *See id.* at Comment. Appellant filed his current petition August 29, 2017; thus, the amended Section 9545(b)(2) does not apply to Appellant's claim.

- 11 -

and proves these two components, then the PCRA court has jurisdiction over the claim under this subsection.

**Commonwealth v. Bennett**, 930 A.2d 1264, 1272 (Pa. 2007) (emphasis omitted).

Further, to properly invoke the newly-discovered facts exception, the petitioner is statutorily required to file his petition "within 60 days of the date the claim could have been presented." 42 Pa.C.S.A. § 9545(b). As our Supreme Court has explained, to satisfy this "60-day requirement," a petitioner must "plead and prove that the information on which he relies could not have been obtained earlier, despite the exercise of due diligence." **Commonwealth v. Stokes**, 959 A.2d 306, 310-311 (Pa. 2008); **Commonwealth v. Breakiron**, 781 A.2d 94, 98 (Pa. 2001). We have explained that "the due diligence inquiry is fact-sensitive and dependent upon the circumstances presented." **Commonwealth v. Burton**, 121 A.3d 1063, 1070 (Pa. Super. 2015) (*en banc*). Moreover, we have held that "due diligence requires neither perfect vigilance nor punctilious care, but rather it requires reasonable efforts by a petitioner, based on the particular circumstances, to uncover facts that may support a claim for collateral relief." **Id.** at 1071.

The PCRA's newly-discovered facts exception permits the filing of a petition outside of the one-year time-bar if the petitioner pleads and proves that the facts upon which the claim is predicated "were unknown to the petitioner and could not have been ascertained by the exercise of due diligence." 42 Pa.C.S.A. § 9545(b)(1)(ii). Our Supreme Court has explained that the newly-discovered facts exception "does not require any merits

- 12 -

analysis of the underlying claim. Rather, the exception merely requires that the 'facts' upon which such a claim is predicated must not have been known to appellant, nor could they have been ascertained by due diligence." ***Bennett***, 930 A.2d at 1271 (internal quotations and citation omitted), *quoting* ***Commonwealth v. Lambert***, 884 A.2d 848, 852 (Pa. 2005). Yet, as our Supreme Court has made clear, "[t]he focus of the exception is on the newly discovered **facts**, not on a newly discovered or newly willing source for previously known facts. . . . [Stated another way,] the newly-discovered facts exception is **not** focused on newly discovered or newly willing sources for 'facts' that were already known." ***Commonwealth v. Marshall***, 947 A.2d 714, 720 and 722 (Pa. 2008) (quotations, citations, and corrections omitted) (emphasis in original).

Appellant claims that Mr. Koenig's statement satisfies the PCRA's newly-discovered facts exception because Appellant was unaware of the fact that Mr. Koenig "would now testify that Appellant was innocent as he was not involved in the planning or commission of the offense."[3] Appellant's Brief at 18. Further, Appellant claims that he first discovered this fact on July 11, 2017, when Mr. Koenig's statements were made known to him. ***See id.*** at 22. According to Appellant, since he filed his current petition within 60 days

---

[3] On appeal, Appellant abandoned any contention that the "newly-discovered fact" was his discovery that Mr. Koenig was arrested and pleaded guilty for the shooting. ***See*** Appellant's Brief at 17-22.

- 13 -

of the date the claim could have been presented, his petition is timely under the newly-discovered facts exception. *Id.* This claim fails.

At the outset, to the extent Mr. Koenig's statement concerns matters that Appellant (allegedly) personally observed, the statement does not satisfy the "newly-discovered fact" exception. If true, Appellant has long been aware of the alleged "facts" that were within his personal observation and that are contained in Mr. Koenig's statement. Further, if true, Appellant could have testified to the facts at trial or Appellant could have called Mr. Koenig to testify during his trial, as, at all relevant times, Appellant was aware of Mr. Koenig's existence. *See*, *e.g.*, N.T. PCRA Hearing, 6/12/18, at 23 (Appellant testified that, prior to his trial, he was aware that Joshua Koenig was "the third shooter"). To be sure, during closing argument in Appellant's trial, Appellant's trial counsel told the jury:

> I submit to you it's very possible that what happened that day was Shannon Stuart, [Troy Gellispie, and Mr. Koenig] go down there, looking for some trouble maybe. I don't know who shot first. . . . I don't care, because [Appellant] had nothing to do with any of this mess. The shooting starts, whoever started shooting, and they scatter. They scatter, the two of them run that way and [Mr. Koenig] goes that way.
>
> Shannon and [Mr. Gellispie] happen to stumble – they see it down the alley. There's the green SUV. Shannon's there. He knows it's [Appellant's] car, because he bought it. It's in his name. It's [Appellant]. Let's go get in. He'll get us out of here. [Appellant] does everything he can. Stay out of this car. Stay out of the car. Get out. Leave me out of this. They get in anyway.
>
> If [Appellant's] the getaway driver that makes no sense, because if he knows they're down there doing something and

- 14 -

> he doesn't want to be involved he leaves.  That makes no
> sense.

N.T. Trial, 3/16/07, at 742-743.

Thus, as to those matters that were within Appellant's personal observation, Appellant has simply found in Mr. Koenig "a newly discovered or newly willing source for previously known facts." **Marshall**, 947 A.2d at 720 and 722.  As explained above, such evidence does not satisfy the PCRA's newly-discovered facts exception.

Further, to the extent Mr. Koenig's statement concerns matters that were not within Appellant's personal observation, the PCRA court properly denied Appellant relief.  To be sure, even if we assume that this evidence satisfied the PCRA's newly-discovered fact exception to the one-year time-bar, the PCRA court properly concluded that the evidence did not entitle Appellant to a new trial.

To be eligible for relief under the PCRA, the petitioner must plead and prove by a preponderance of the evidence that his conviction or sentence resulted from "one or more" of the seven, specifically enumerated circumstances listed in 42 Pa.C.S.A. § 9543(a)(2).  One of these statutorily enumerated circumstances is the "unavailability at the time of trial of exculpatory evidence that has subsequently become available and would have changed the outcome of the trial if it had been introduced."  42 Pa.C.S.A. § 9543(a)(2)(vi).

To obtain relief based on after-discovered evidence, an appellant must show that the evidence:

(1) could not have been obtained prior to the conclusion of the trial by the exercise of reasonable diligence; (2) is not merely corroborative or cumulative; (3) will not be used solely to impeach the credibility of a witness; and (4) would likely result in a different verdict if a new trial were granted.

**Commonwealth v. Foreman**, 55 A.3d 532, 537 (Pa. Super. 2012), *citing*

**Commonwealth v. Pagan**, 950 A.2d 270, 292 (Pa. 2008). To determine

whether the evidence is "of such nature and character" to compel a different

verdict in a new trial, a court should consider "the integrity of the alleged

after-discovered evidence, the motive of those offering the evidence, and the

overall strength of the evidence supporting the conviction." **Commonwealth**

**v. Padillas**, 997 A.2d 356, 365 (Pa. Super. 2010), *appeal denied*, 14 A.3d

826 (Pa. 2010).

In the case at bar, the PCRA court held a hearing, heard Joshua Koenig

testify, and specifically concluded that Mr. Koenig's testimony was "not worthy

of belief." PCRA Court Opinion, 8/10/18, at 13. The PCRA court explained:

> We find it troubling that Mr. Koenig was unable to remember recent events when he spoke to the detective about [Appellant's] case. During cross-examination, Mr. Koenig was asked when in 2017 he spoke with [Appellant] or someone in [Appellant's] family about having information on the case. Mr. Koenig stated that he "couldn't tell you exactly when." Mr. Koenig estimated that it was probably within two weeks before he interviewed with the detective that he informed [Appellant] or his family.
>
> Later, when Mr. Koenig was asked if he ever wrote any letters to the detective, Mr. Koenig expressed doubt about whether he had, then stated that he may have written a letter but did not remember if he sent a letter to the detective.
>
> We expressed concern at the hearing that if Mr. Koenig could not remember details about how he was contacted about

[Appellant's] case or when he was talking to individuals, then we would have issues with credibility for events that occurred back in 2007.

Further, we also find troubling that Mr. Koenig in fact implicated [Appellant] in his statements given in his pre-sentence investigation report. In this report, Mr. Koenig stated that on the morning of the shooting, "[Appellant] instructed [Mr. Koenig] to come along, as they had to go 'meet someone.'" While [*en route*, Appellant] gave Mr. Koenig a 9mm pistol and stated that, "You may need this." In addition, Mr. Koenig stated that gunfire [was] exchanged between [Appellant], Mr. Gillespie, and an unknown individual.[] After the shooting, Mr. Koenig stated that he met up with [Appellant], gave [Appellant] the gun back, and [Appellant] got rid of the guns by tossing them into the river off of the Columbia Bridge and into the Susquehanna River.

Taking all of these circumstances into consideration, we find that Mr. Koenig's present testimony about [Appellant's] lack of involvement is not credible and, "of such a nature and character that a different verdict will likely result if a new trial is granted."

*Id.* at 14-16 (citations omitted).

As our Supreme Court has held, "[w]e are bound by the PCRA court's credibility findings where those determinations are supported by the record." **Commonwealth v. Small,** 980 A.2d 549, 558 (Pa. 2009). Here, the PCRA court's credibility determination – finding Joshua Koenig's testimony "not worthy of belief" – is entirely supported by the record. And, since Mr. Koenig's testimony is false and unworthy of belief, it does not satisfy the after-discovered evidence standard, as it would not "likely result in a different verdict if a new trial were granted." **Pagan**, 950 A.2d at 292; **Padillas**, 997 A.2d at 365 ("before granting a new trial, a court must assess whether the alleged after-discovered evidence is of such nature and character that it would

likely compel a different verdict if a new trial is granted. In making that determination, a court should consider the integrity of the alleged after-discovered evidence, the motive of those offering the evidence, and the overall strength of the evidence supporting the conviction") (citations omitted). Appellant's claim on appeal thus has no merit.

Therefore, we affirm the PCRA court's order, which denied Appellant relief on his fourth PCRA petition.

Order affirmed. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: <u>04/30/2020</u>