J-S17003-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| MARVIN PRICE, | |
| Appellant | No. 3175 EDA 2018 |

Appeal from the PCRA Order Entered October 10, 2018
In the Court of Common Pleas of Philadelphia County
Criminal Division at No(s): CP-51-CR-0503251-2004

BEFORE:  BENDER, P.J.E., OLSON, J., and FORD ELLIOTT, P.J.E.

MEMORANDUM BY BENDER, P.J.E.:                **FILED MAY 17, 2019**

Appellant, Marvin Price, appeals *pro se* from the post-conviction court's order dismissing his third petition filed pursuant to the Post Conviction Relief Act (PCRA), 42 Pa.C.S. §§ 9541-9546.  We affirm.

The PCRA court summarized the procedural and factual history of this case as follows:

> **PROCEDURAL HISTORY**
>
> The instant matter involves the killing of Troy Jones on November 7, 2003.  [Appellant] was tried for that murder before this [c]ourt and a jury between January 15, 2008[,] and January 18, 2008.  On January 18, 2008, the jury found [Appellant] guilty of first-degree murder and possession of an instrument of crime. This [c]ourt thereafter sentenced [Appellant] to life imprisonment and a concurrent sentence of two and a half to five years' incarceration for the possession of an instrument of crime charge.
>
> [Appellant] filed a timely appeal from the judgment of sentence, arguing, *inter alia*, that the Commonwealth's evidence — consisting of dying declarations and excited utterances — was

insufficient to sustain a conviction and that this [c]ourt abused its discretion in admitting testimony of Philadelphia Police Officer Dawn Benton regarding the victim's dying declaration. The Superior Court of Pennsylvania issued a memorandum and order on December 21, 2009, affirming the judgment of sentence. ***See Commonwealth v. Price***, [990 A.2d 52] (Pa. Super. 2009). The Supreme Court of Pennsylvania denied allocatur on June 22, 2010. ***Commonwealth v. Price***, 997 A.2d 1177 (Pa. 2010).[1]

\*\*\*

**FACTUAL HISTORY**

On November 7, 2003, Troy Jones was gunned down outside of his parents' house … in Philadelphia. At about 10:00 p.m., that night, Troy Jones went to his parents' home to visit his nephew, who was recuperating from a serious automobile accident. He stayed for about an hour. At about 11:00 p.m., Troy Jones walked out of his parents' house into an ambush of bullets. He was shot four times. The shooter sped off.

Darnell Gantt, Troy Jones'[s] nephew, rushed outside the house. Troy Jones collapsed into his arms and said, "Marvin shot me." Seconds later, Dorothy and Richard Jones ran onto their front porch. As they entered the chaos, Troy Jones said, "Mom, I'm shot …[.] Marvin, Marvin Price shot me."

Dorothy Jones called 9-1-1. Philadelphia Police and Emergency Medical Technicians arrived shortly thereafter. Officer Dawn Benton arrived at the scene and positioned herself behind Richard Jones, who was kneeling over his severely injured son. She overheard Troy Jones say, "Marvin shot me." However, the

---

[1] After our Supreme Court denied Appellant's petition for allowance of appeal, he did not seek review with the U.S. Supreme Court. Thus, his judgment of sentence became final on September 20, 2010, when the time for filing a petition for writ of *certiorari* to the U.S. Supreme Court expired. ***See*** 42 Pa.C.S. § 9545(b)(3) (stating that a judgment of sentence becomes final at the conclusion of direct review or the expiration of the time for seeking the review); U.S.Sup.Ct.R. 13 (providing that "[a] petition for a writ of *certiorari* seeking review of a judgment of a lower state court that is subject to discretionary review by the state court of last resort is timely when it is filed with the Clerk within 90 days after entry of the order denying discretionary review").

Commonwealth was unaware of this until January 17, 2008, the last day of the Commonwealth's case-in-chief.

The notes of testimony from January 17, 2008, show that before the jury entered the courtroom that morning, both counsel for [Appellant] and the Commonwealth met with this [c]ourt in chambers. During this conference, the prosecutor informed this [c]ourt that just moments earlier, Officer Benton provided her with new evidence. Officer Benton told the prosecutor that[,] while she was at the Jones[es'] front porch on November 7, 2003, she heard Troy Jones say, "Marv shot me." Defense counsel objected to the admissibility of this evidence. This [c]ourt overruled the objection, stating that the witness "was subject to your cross-examination."

After the parties, judge, and jury returned to the courtroom, the Commonwealth called Officer Benton to the stand. Under oath, she testified that she was standing on the front porch as officers tended to Troy Jones['s] injuries. Troy Jones "was alert, his eyes were open … and he was talking." She then testified that she heard Troy Jones say, "Marvin shot me."

[Appellant's] trial counsel thoroughly cross-examined Officer Benton, asking questions such as: "… are you telling us that you didn't bring up to anybody in preparation for going to court in this case that you heard Troy Jones say the word 'Marvin'"; "… isn't that an important point, isn't that something you would bring up to somebody if that's what you heard?"; and[,] "Did you ever prepare a document memorializing in any way, shape, or form that you heard Troy Jones say the word 'Marvin'?"

In her responses to these questions, Officer Benton testified that[,] according to her recollection, she informed the Commonwealth about this statement throughout trial preparations, including preparations occurring in November 2007.

After the Commonwealth rested, defense counsel moved for a mistrial, arguing that when the prosecutor interviewed Officer Benton in November 2007, she obtained discoverable material that she failed to pass to [Appellant]. The prosecutor defended her position, arguing that "although [Officer Benton] thinks a couple years ago she told me, whether she did or not, I can't remember her telling me…." This [c]ourt denied the motion, reasoning:

- 3 -

> I do think you were effective in cross-examination … and having observed your effective cross-examination, if you would like to call anybody, and quite frankly, I think last minute witnesses cut against the Commonwealth, but you have a right to call whoever you want at this point, but the motion for mistrial is denied.

PCRA Court Opinion (PCO), 11/14/2018, at 1-2, 3-5 (internal citations and footnote omitted; some brackets added).

On July 24, 2018, Appellant filed *pro se* his third PCRA petition. Therein, he alleged that he found newly-discovered evidence in the form of a June 7, 2018 news article, which led to him discovering Detective Thomas Augustine's "being cited for [his] role in a wrongful conviction civil suit stemming from his misconduct in [another] criminal matter…." PCRA Petition, 7/24/2018, at 3 (unnumbered). Appellant avers that Detective Augustine prepared false police reports in his case, and "[w]ithout the false reports, there would not have been direct evidence linking [Appellant] to the crime, so that the prosecutor would not have had cause to prosecute [Appellant]." *Id.* at 6.

On September 4, 2018, the PCRA court issued a Pa.R.Crim.P. 907 notice of its intent to dismiss Appellant's petition, indicating that the issue raised therein was without merit. Subsequently, on September 13, 2018, Appellant filed *pro se* an amended PCRA petition, in which he added that he uncovered another newly-discovered fact, explaining that Officer Dawn Benton was not listed in original discovery materials and that Officer Benton was signed into

- 4 -

the Criminal Justice Center on the four days of Appellant's trial as Officer Dawn Kennedy. *See* Amended PCRA Petition, 9/13/2018, at 5-6.[2]

On October 10, 2018, the PCRA court entered an order dismissing Appellant's petition. On October 16, 2018, Appellant filed a timely notice of appeal. The PCRA court did not direct Appellant to file a Pa.R.A.P. 1925(b) concise statement of errors complained of on appeal, and he did not do so. On November 14, 2018, the PCRA court issued its Rule 1925(a) opinion, stating that it "denied relief with respect to [Appellant's] newly[-]discovered evidence claims because [Appellant] failed to establish that the information he included in his PCRA petitions would result in a different verdict." PCO at 7.

> Presently, Appellant raises the following issues for our review:
>
> Claim I. Whether the PCRA [court] erred in dismissing [Appellant's] petition as untimely[?]
>
> Claim II. Whether the PCRA [court] erred in not following the ruling in [**Commonwealth**] **v. Burton**[, 158 A.3d 618 (Pa. 2017)]?
>
> Claim III. Whether [Appellant] qualifies for the exception to the PCRA…?

Appellant's Brief at 4, 6, 11.[3]

---

[2] Appellant did not conventionally number the pages of his amended petition so we disregard his pagination.

[3] In his brief, Appellant does not include a Statement of Questions Involved section in accordance with Pa.R.A.P. 2116. *See* Pa.R.A.P. 2116(a) (setting forth requirements for the Statement of Questions Involved section). Nevertheless, he divides his Argument section into three parts, so we rely on the headings of those parts to determine the issues Appellant wishes to raise.

Initially, we note that our standard of review regarding an order denying post-conviction relief is whether the findings of the court are "supported by the record and free of legal error." *Commonwealth v. Albrecht*, 994 A.2d 1091, 1093 (Pa. 2010) (citations omitted). Even though the PCRA court neglected to address the timeliness of Appellant's petition, we must begin there because "[t]he PCRA's time restrictions are jurisdictional in nature. … Without jurisdiction, we simply do not have the legal authority to address the substantive claims." *Id.* (citations omitted). Further, our Supreme Court has observed that, "even where the PCRA court does not address the applicability of the PCRA timing mandate, this Court will consider the issue *sua sponte*, as it is a threshold question implicating our subject matter jurisdiction and ability to grant the requested relief." *Commonwealth v. Whitney*, 817 A.2d 473, 475-76 (Pa. 2003) (citations omitted).

With respect to timeliness, the PCRA provides, in pertinent part, the following:

> **(b) Time for filing petition.--**
>
> > (1) Any petition under this subchapter, including a second or subsequent petition, shall be filed within one year of the date the judgment becomes final, unless the petition alleges and the petitioner proves that:
> >
> > > (i) the failure to raise the claim previously was the result of interference by government officials with the presentation of the claim in violation of the Constitution or laws of this Commonwealth or the Constitution or laws of the United States;
> > >
> > > (ii) the facts upon which the claim is predicated were unknown to the petitioner and could not have been ascertained by the exercise of due diligence; or

> (iii) the right asserted is a constitutional right that was recognized by the Supreme Court of the United States or the Supreme Court of Pennsylvania after the time period provided in this section and has been held by that court to apply retroactively.

42 Pa.C.S. § 9545(b)(1)(i)-(iii).  Additionally, at the time Appellant filed his petition, Section 9545(b)(2) required that any petition attempting to invoke one of these exceptions "be filed within sixty days of the date the claim could have been presented."  42 Pa.C.S. § 9545(b)(2).[4]

In this case, as stated above, Appellant's judgment of sentence became final on September 20, 2010.  Therefore, his present petition, filed in July of 2018, is clearly untimely, and Appellant must meet one of the exceptions to the timeliness requirement set forth in Section 9545(b)(1)(i)-(iii), *supra.*

First, in his petition, Appellant alleged that "a recent article from [the] June 7, 2018[] *Daily Newspaper*[] led to an inquiry of the actual case matter resulting in the discovery of Detective Thomas Augustine['s] being cited for [his] role in a wrongful conviction civil suit stemming from his misconduct in [another] criminal matter…."  PCRA Petition at 3.  He claims that "[Detective] Augustine and others uniformly provided … prosecutors with false, misleading, and incomplete information in order to obtain approval for [Appellant's] arrest and prosecution."  *Id.* at 4.  Appellant says that, at trial, he "did not attack

---

[4] A recent amendment to Section 9545(b)(2), which became effective on December 24, 2018, changed the language to require that a petition "be filed within one year of the date the claim could have been presented."  42 Pa.C.S. § 9545(b)(2).

[Detective] Augustine's prior conduct because he had no basis to challenge his credibility. Thus, the evidence may be used to attack the veracity of [Detective] Augustine's warrant, reports[,] and the evidence surrounding [Appellant's] arrest." *Id.* at 5.[5]

Appellant argues that this claim meets the governmental interference exception under Section 9545(b)(1)(i), and the newly discovered fact exception pursuant to Section 9545(b)(1)(ii). *See* PCRA Petition at 1; Amended Petition at 2. We reject this argument because — although Appellant attaches to his petition and brief various news articles regarding wrongful convictions that occurred in Philadelphia — none of them mentions Detective Thomas Augustine.[6, 7] *See* Pa.R.Crim.P. 902(D) ("The defendant *shall* attach to the petition any affidavits, records, documents, or other evidence which show the facts stated in support of the grounds for relief, or

---

[5] Appellant reiterates these claims in his amended petition. *See* Amended Petition at 10-14.

[6] Appellant does not point us to where exactly Detective Augustine is referenced, and our own review does not uncover where he is mentioned. Further, Appellant attaches no other documents connecting Detective Augustine to a 'wrongful conviction civil suit.'

[7] Appellant seems to restyle his argument on appeal, focusing less on alleged misconduct by Detective Augustine, and instead averring that a slew of others in the Philadelphia Police Department and the District Attorney's Office engaged in misconduct with respect to his case. *See* Appellant's Brief at 4 ("For the first time on appeal, [Appellant] alleges police and prosecution corruption."). We do not address this argument. *See* Pa.R.A.P. 302(a) ("Issues not raised in the lower court are waived and cannot be raised for the first time on appeal.").

the petition shall state why they are not attached.") (emphasis added). Thus, Appellant has failed to plead and prove facts to meet either timeliness exception for this claim.

In his second claim, from what we can decipher, Appellant asserts that Officer Dawn Benton was not listed in any original discovery materials, and she did not sign into the Criminal Justice Center under this name during Appellant's trial in January of 2008, but instead signed in under the name of Officer Dawn Kennedy. *See* Amended Petition at 5-7. Appellant contends that Officer Benton "was present daily at trial proceeding[s in] which she had no immediate relation to, nor was she listed as a Commonwealth witness, until a last minute surprise moment[,] tilting [the] scale in favor of the prosecution." *Id.* at 6. *See also* Appellant's Brief at 11 (discussing new evidence such as "[c]ourt [h]ouse [l]og-in/[s]ign-in [s]heet reflecting Officer Benton (a.k.a. Kennelly [*sic*]) [was] present in [the] courtroom of [the] accused daily before taking [the] stand on [the] last day of trial…."). Further, because Officer Benton did not sign in under that name, Appellant states that he could not cross-examine her effectively. *See* Amended Petition at 7. In support of this claim, Appellant attaches to his amended petition an August 6, 2018 response to a Right to Know request he made, which provided that: "P/O Dawn Kennedy #2741 now P/O Dawn Benton was signed into the Criminal Justice Center on January 15, 2008 (Rm 505) & January 16, 17, 18, 2008 (Rm 602)." *See* Right to Know Response, dated 8/6/2018, attached to Amended Petition. Thus, Appellant insists that this claim meets the governmental

interference exception under Section 9545(b)(1)(i), and the newly discovered fact exception pursuant to Section 9545(b)(1)(ii). *See* Amended Petition at 2; Appellant's Brief at 5, 8-9, 11.

Again, we reject Appellant's argument. To invoke timeliness exceptions under either Section 9545(b)(1)(i) or Section 9545(b)(1)(ii), Appellant must show why, with the exercise of due diligence, he did not uncover these facts about Officer Benton earlier. *See Commonwealth v. Fennell*, 180 A.3d 778, 782 (Pa. Super. 2018) ("The timeliness exception set forth in Section 9545(b)(1)(ii) requires a petitioner to demonstrate he did not know the facts upon which he based his petition and could not have learned those facts earlier by the exercise of due diligence. Due diligence demands that the petitioner take reasonable steps to protect his own interests.") (citation omitted); *Commonwealth v. Rizvi*, 166 A.3d 344, 349 (Pa. Super. 2017) ("[E]ven if [the a]ppellant's claim possessed substantive merit, he fails to offer a reasonable explanation why, with the exercise of due diligence, he did not ascertain this alleged interference of government officials earlier and seek redress.") (citation omitted). At trial, Officer Benton testified that, at the time of the incident, she was not going by the last name of Benton, but rather Kennedy. N.T. Trial, 1/17/2008, at 32. Additionally, the Commonwealth called "Officer Dawn Kennedy Benton" to testify. N.T. Trial, 1/16/2008, at 102. Appellant, therefore, has been aware that she has gone by these different last names since at least the time of trial. By exercising due diligence, Appellant could have investigated earlier whether she was

- 10 -

mentioned in discovery, or had signed in to the courthouse on the days of trial. Consequently, this claim fails to satisfy Section 9545(b)(1)(i) and Section 9545(b)(1)(ii). Accordingly, we affirm the PCRA court's order dismissing Appellant's petition.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 5/17/19