J-S37041-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| RUDOLPH MCGRIFF | : | |
| | : | |
| Appellant | : | No. 2066 EDA 2024 |

Appeal from the PCRA Order Entered July 30, 2024
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s):  CP-51-CR-0002445-2014

BEFORE:   DUBOW, J., KUNSELMAN, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY STEVENS, P.J.E.:                    **FILED JANUARY 16, 2026**

Appellant, Rudolf McGriff, appeals from the July 30, 2024, denial of his second petition pursuant to the Post Conviction Relief Act ("PCRA"), 42 Pa.C.S. §§ 9541-46, as untimely. After careful review, we affirm in part and dismiss the appeal in part as moot.

This Court has previously set forth the facts and procedural history of this case as follows:

> Appellant and Malisha Jessie had been dating on-and-off for approximately [five] years. Friends and relatives testified that their relationship was "toxic," including testimony from Malisha's sister, Priscilla Jessie, that Appellant [physically assaulted] Malisha on two occasions. Malisha's son, Myzeh Jessie, who was 10 years old at the time of the murder, testified that Malisha had discovered Appellant was cheating on her and that Appellant had moved this woman, ["Femi Johnson,"] into one of his properties

_____

[*] Former Justice specially assigned to the Superior Court.

on Bailey Street. He testified that he heard Malisha tell Appellant over the phone that she "should have busted the windows out of his car and flattened his tires when she saw their car out there the other day." On April 6, 2013, the day before her death, Malisha drove by the house on Bailey Street with Myzeh. He testified that she got out of the car and called Appellant. They then drove around the neighborhood and found Appellant walking his dog. Malisha exited the vehicle again and got into a screaming fight with Appellant, repeating that she would slash the tires on his car. A surveillance video from a nearby store confirmed [Malisha parked her car on Bailey Street, exited her car, walked north on Bailey Street while on her phone, disappeared from view for a few minutes, and then reappeared on camera walking back towards her car. The video did not capture her interaction with Appellant and his dog]. Myzeh and Malisha then proceeded to a family cookout.

That night, Malisha went out bar hopping with her friend, Erica Burton. Burton testified that at around [2:00 a.m.], she and Malisha got into separate cars to drive home. Instead of following Burton onto Route 76, she noticed that Malisha turned off. The next morning, Malisha's body was found between two parked cars on Bailey Street with two gunshots to her head and a gunshot to her chest. Police recovered Malisha's phone after her death and found photos of Appellant's car in front of the house on Bailey Street as well as a photo of a piece of mail addressed to Femi Johnson at the Bailey Street house. The last photo on Malisha's cell phone was of Appellant's car and was taken at 2:53 a.m. around the corner from Bailey Street. There were also several calls to Johnson's cell phone, where Malisha had blocked her own number from appearing on Johnson's caller [identification functions].

Freddie Brown testified that, at some time between [2:00 and 2:30 a.m.], he was asleep in his living room on Bailey Street and heard a man and woman arguing outside. He looked out his window, sat back down, and then heard two gunshots. He looked out again and saw someone standing in the street wearing a gray hoodie. [Lonnie Wilson testified that at around 2:30 a.m. he was asleep inside his home on Bailey Street when he heard two gunshots and a woman yell, "No!"] Eric Wallace, who also lives on Bailey Street, testified that he was asleep in his front upstairs bedroom when he heard a man and woman arguing. During his interview with police, Wallace stated that he opened his front door

- 2 -

to look out [after hearing gunshots] and saw [Appellant], "his old neighbor, Tina's brother," walking by toward Willard Street, wearing a gray hoodie. At trial, he recanted his identification of [Appellant] and testified that he never heard gunshots, and when he looked out his front door, he saw someone pass by, but he couldn't identify them[.]

Appellant's girlfriend, Johnson, testified that she had moved into Appellant's Bailey Street house in early 2013 and lived there rent-free. When she asked Appellant about Malisha after seeing her on Instagram, Appellant told her that he and Malisha had dated in the past and [Johnson] assumed that they were no longer together. Johnson testified that on the day of the murder, she was at home and that [Appellant] was in and out all afternoon. She stated that he went out that night with a friend, returned at some point "for a quick second," and then left again. (When testifying before the grand jury, Johnson [] claimed that [Appellant was] with her between 12:48 a.m. and 2:54 a.m.). Johnson testified that Appellant called [] and asked her to bring his two cell phones to him at Charles (a/k/a "Theme") Bonner's house. Cell phone records showed this phone call took place at 2:54 a.m. (Johnson testified at the grand jury that Appellant had been gone at least half an hour before he called her to bring him his cell phones). The Commonwealth introduced evidence that it took 16 minutes to travel by car from Appellant's Bailey Street house to Bonner's house in West Philadelphia. Appellant's lifelong friend, Bonner, testified that on the day of the murder, he and Appellant went to a [hair show]. He then dropped Appellant off at his car [around 1:00 a.m.] He stated that around "two-something" in the morning, Appellant showed up at his house. Appellant asked to borrow a phone so he could call someone to bring his cell phones to him. Bonner testified that Johnson arrived shortly thereafter.

Appellant's wife, Nekeisha Gay-McGriff, provided Appellant's *alibi*. She testified that she and Appellant had moved with their children to South Carolina but that they still visited Philadelphia regularly. On the weekend in question, she was in [Philadelphia] with her two daughters visiting relatives. Gay-McGriff stated that on the night of April 6, she planned to begin driving back to South Carolina around 1[:00] a.m. She stated Appellant called her around 12:30 a.m. to see if she was ready to leave. He arrived at her mother's house around 10 minutes later and she could smell alcohol on his breath, although she did not believe he was drunk. Gay-McGriff testified that she thought it would be unsafe for him

- 3 -

to drive so she agreed to drive him to his property on Bailey Street. Gay-McGriff claimed that she stopped at a mini-mart while Appellant waited in the car, called him from inside the store to see if he wanted a snack, then took him to the Bailey Street house, where she parked on 26th Street closer to Willard Street. She claimed that Appellant left and then returned to the car approximately 15-20 minutes later. She stated that she then dropped him off at a friend's house in West Philadelphia before driving away with her children to return to South Carolina.

Surveillance video from a store at the corner of Bailey and Allegheny Streets showed a man meeting Appellant's description wearing a gray hoodie walking past the store at 1:57 a[.]m. At approximately 2:27 a[.m.], the same man walked on the west side of Bailey Street toward Allegheny Avenue.

After a lengthy police investigation, Appellant was arrested in October 2013, six months after Malisha's murder.

At trial, the Commonwealth alleged that Appellant encouraged Johnson to pressure Wallace not to testify at the preliminary hearings. To show this, the Commonwealth played several recordings of prison telephone calls between Appellant and Johnson after the former was arrested. During those conversations, Appellant and Johnson discussed "jobs" and Johnson's need to talk to a person called "Ms. Molly" who lived on Bailey Street. Johnson disputed the Commonwealth's theory that "Ms. Molly" referred to Wallace and that her job was to ensure that Wallace did not testify at the preliminary hearing. Nonetheless, Johnson conceded that she may have told Appellant on December 7, 2013, that "Ms. Molly is gone." N.T., 6/19/2015, at 140. Johnson testified before the grand jury on December 6, 2013. Early the following day, December 7, 2013, Johnson [] was driving back down south and was on Route I-95 in Delaware or Maryland when [Appellant] called her; they spoke on the phone for over an hour. Johnson also confirmed that they were having an argument, with [Appellant] saying that she failed to handle her job properly. She noted that as a result of that argument, she turned the car around and drove back up to Philadelphia. Johnson also agreed that having talked to "Ms. Molly," she was back on the road the very next morning.

Wallace did not appear at the December 18, 2013 preliminary hearing, and the hearing had to be continued.

- 4 -

The Commonwealth introduced evidence that after Wallace failed to appear to testify at the preliminary hearing, a bench warrant was issued and he subsequently went to the District Attorney's Office and told [Detective Edward Tolliver that he was being threatened by unnamed persons who did not want him to testify,] that he was fearful "of the truth[,]" and that he "was not pointing the finger at nobody." Wallace later testified at the preliminary hearing and told the same version of events that he had told detectives, minus his identification of [Appellant] as the man who walked by [toward Willard Street]. Wallace's lifelong friend, Marcella Jones, testified that Wallace told her that he had been a witness to a homicide but that she stopped him from giving her any details. She testified that Wallace told her he was scared for his life because of what he had seen.

On July 1, 2015, a jury convicted Appellant of first-degree murder, firearms not to be carried without a license, carrying firearms on public streets in Philadelphia, and possessing instruments of crime. On that same date, the trial court imposed an aggregate sentence of life imprisonment without the possibility of parole. This Court affirmed Appellant's judgment of sentence on April 21, 2017. [***Commonwealth v. McGriff***, 160 A.3d 863, 865 (Pa. Super. 2017)]. On December 26, 2017, the Pennsylvania Supreme Court denied further review. ***Commonwealth v. McGriff***, 644 Pa. 372, 176 A.3d 853 (Pa. 2017).

***Commonwealth v. McGriff***, 262 A.3d 489 (Pa. Super. 2021)(footnotes omitted), ***aff'd***, 672 Pa. 454 (2022).

Appellant filed his first PCRA petition on October 14, 2018, and a subsequent amended petition on February 26, 2019. The amended petition was dismissed as meritless without a hearing pursuant to Pa.R.Crim.P. 907 on October 24, 2019. This Court affirmed that dismissal on August 13, 2021. ***Id.*** Appellant filed a petition for allowance of appeal from this Court's affirmance to the Pennsylvania Supreme Court, which was itself denied on February 23, 2022. ***Id.***

On July 11, 2023, Appellant, with assistance of counsel, filed his second PCRA petition advancing three claims. The first claim is predicated on two pieces of evidence concerning statements Appellant himself made. The first is a note ostensibly prepared by the prosecutor representing the Commonwealth at trial which memorialized a pre-trial interview with Commonwealth witness Priscilla Jessie dated June 10, 2015, reading "wk [sic] after: dets [sic] wanted him to go down there – said dad said [not to[1]] go down w/o [sic] lawyer." The second is a note from the investigating detective dated April 30, 2013, reading "[s]aid he needs a lawyer to talk to us." *Id.* at 35, 36. Appellant contends that the Commonwealth violated its duty under *Brady* by not producing these documents in pre-trial discovery and violated his duty under *Napue* by arguing to the jury, while in possession of these notes, that Appellant lied to or mislead the victim's family by telling them he would speak to the police as Appellant ultimately did not give a statement regarding the murder. *Id.*

Appellant's second claim is similarly predicated on two pieces of evidence. The first is a mugshot of Commonwealth witness Eric Wallace with a note written on it, reading "3223 N. Bailey St. Scofflaw warrant" along with accompanying documentation which indeed indicated that there was an active warrant for Mr. Wallace's arrest at the time he gave his initial statement to

---

[1] We observe that the referenced note is handwritten and includes shorthand notation; the portion of the note which Appellant transcribes as "not to" appears as a numeral zero with a diagonal strike drawn through it.

the police. The second consists of a subpoena directing Mr. Wallace to appear on December 18, 2013, for Appellant's preliminary hearing bearing a handwritten note reading "served by Det. Griffin 11/29 – 12/1 one of those days[.] Says no need relocation, not concerned, no one stepped to them." ***Id.*** at 43, 44. Appellant contends that the prosecution violated its duty under ***Brady*** by not producing these documents in pre-trial discovery, and the Commonwealth violated its duty under ***Napue*** by arguing that Mr. Wallace's eventual recantation was the result of his having been threatened by Appellant's family. ***Id.*** at 46.

Appellant's final claim alleges cumulative effect of the errors presented in claims one and two, and as such it cites no additional evidence. ***Id.*** at 52-53.

On June 5, 2024, the PCRA court issued its notice of intent to dismiss Appellant's petition without a hearing pursuant to Pa.R.A.P. 907, concluding that the claims raised were untimely and lacked merit. On July 30, 2024, the PCRA Court entered an order dismissing the petition. Appellant filed his notice of appeal on August 8, 2024, and his concise statement on August 30, 2024.

On October 23, 2024, this Court received a letter from the PCRA Court requesting additional time to prepare and file their opinion pursuant to Pa.R.A.P. 1925(a), citing unfamiliarity with Appellant's case and a need to order transcripts. On October 30, 2024, Appellant filed an Application for Remand before this Court based upon the PCRA Court's letter. However, on

November 22, 2024, this Court denied Appellant's Application without prejudice to Appellant's right to raise the request before this panel either by refiling his motion following assignment of the panel, or by raising this issue in his Appellant's brief. Appellant has elected to pursue the latter.

Thus, on appeal, Appellant raises two issues before this Court:

> 1. Did the PCRA court violate Pennsylvania Rule of Criminal Procedure 907 and Appellant's due process rights in issuing a 1925(a) Opinion that articulated an entirely distinct basis for dismissal than those previously provided in its 907 Notice, and by dismissing Appellant's petition without any independent review of the record?
>
> This question was not presented to the court below, as the basis for this claim arose after the PCRA court no longer had jurisdiction. This issue was not waived, as Appellant raised it at his first opportunity to do so, as set forth below.
>
> 2. Did the PCRA court err in dismissing Appellant's Second PCRA Petition as untimely where Appellant's well-pleaded Brady claims each met the governmental interference exception to the PCRA's one-year time bar, as articulated in 42 Pa.C.S. § 9545(b)(1)(i), and Appellant further established that each of his two claims satisfied the newly discovered facts exception, articulated in 42 Pa.C.S. § 9545(b)(1)(ii)?
>
> This question was presented to the court below and answered in the negative.

Appellant's Brief at 2.

In the interest of judicial economy, as we are presented with the question of whether Appellant's petition was timely filed in addition to Appellant's request to remand the matter to the lower court, we elect to resolve the question of timeliness first, as "Pennsylvania law makes clear no

court has jurisdiction to hear an untimely PCRA petition," and we will not remand a matter to be reviewed by a court without jurisdiction to do so. **Commonwealth v. Robinson**, 837 A.2d 1157, 1161 (2003); **See also Commonwealth v. Whitney**, 817 A.2d 473, 478 (Pa. 2003)(holding the timeliness of a PCRA petition is a "threshold question implicating [the court's] subject matter jurisdiction"), *overruled on other grounds by* **Commonwealth v. Small**, 238 A.3d 1267 (Pa. 2020).

In reviewing a PCRA court's denial of an Appellant's petition, we seek to determine whether the evidence of record supports the determination of the lower court and whether the ruling is free of legal error. **Commonwealth v. Rachak**, 62 A.3d 389, 391 (Pa. Super. 2012). Moreover, this Court is not bound by the reasoning of the lower court, and we may therefore affirm the decision to dismiss on any basis. **Commonwealth v. Doty**, 48 A.3d 451, 456 (Pa. Super. 2012).

In determining whether a petition is timely, we observe the PCRA requires any petition, including second or subsequent petitions, "shall be filed within one year of the date the judgment becomes final." 42 Pa.C.S.A. § 9545(b)(1). "A judgment becomes final at the conclusion of direct review, including discretionary review in the Supreme Court of the United States and the Supreme Court of Pennsylvania, or at the expiration of the time for seeking the review." 42 Pa.C.S.A. § 9545(b)(3); **see also** Sup. Ct. R. 13(1) ("[A] petition for a writ of certiorari to review a judgment in any case [. . .] entered

by a state court of last resort [. . .] is timely when it is filed with the Clerk of this Court within 90 days after entry of the judgment.").

However, the Act provides three exceptions to this one-year time-bar:

(i) the failure to raise the claim previously was the result of interference by government officials with the presentation of the claim in violation of the Constitution or laws of this Commonwealth or the Constitution or laws of the United States;

(ii) the facts upon which the claim is predicated were unknown to the petitioner and could not have been ascertained by the exercise of due diligence; or

(iii) the right asserted is a constitutional right that was recognized by the Supreme Court of the United States or the Supreme Court of Pennsylvania after the time period provided in this section and has been held by that court to apply retroactively.

42 Pa.C.S.A. 9545(b)(1)(i)-(iii).

Further, "any petition invoking an exception [to the one-year time-bar] shall be filed within one year of the date the claim could have been presented." 42 Pa.C.S.A. 9545(b)(2). To successfully invoke either the governmental interference exception or the newly discovered facts exception, a petitioner must plead and prove that the information upon which the claim is premised could not have been obtained by the petitioner earlier through the exercise of due diligence. **Commonwealth v. Abu-Jamal**, 596 Pa. 219, 227 (2008)(*citing* **Commonwealth v. Breakiron**, 566 Pa. 323, (Pa. 2001)); 42 Pa.C.S.A. §9545(b)(2). "We emphasize that it is the petitioner who bears the burden to allege and prove that one of the timeliness exceptions applies."

- 10 -

***Commonwealth v. Marshall***, 947 A.2d 714, 719 (Pa. 2008)(citation omitted).

In the instant matter, Appellant acknowledges his petition, filed July 11, 2023, is facially untimely, as his judgment of sentence became final on March 26, 2018, ninety days after the Pennsylvania Supreme Court denied Appellant's first petition for allowance of appeal. He thus seeks to invoke the governmental interference and newly discovered facts exceptions relative to each of his claims. However, his pleading is insufficient to establish that he is entitled to either exception to the time-bar, as he has failed to plead any facts which demonstrate that the information upon which the claim is premised could not have been obtained sooner through the exercise of due diligence. ***See Abu-Jamal***, ***supra***; ***Breakiron***, ***supra***.

Rather, insofar as Appellant's petition addresses the due diligence requirement of either pled exception to the time bar, he contends that he exerted all effort required to show he acted with due diligence by submitting a discovery request to the Commonwealth prior to trial.

> "First, Petitioner exercised reasonable diligence by formally moving for discovery on March 19, 2014. Omnibus Motion at p. 4, 7 (A033, A-035). Petitioner's request included "any evidence favorable to the accused which is material either to guilt or to punishment, and which is within the possession of the attorney for the Commonwealth, including, but not limited to, all Brady and Giglio material" Id. at p. 4 (A-033). This request surpassed reasonable diligence. See Com. v. Bagnall, 235 A.3d 1075, 1091 (Pa. 2020) (noting that reasonable diligence means "a showing that the party has put forth a reasonable effort to obtain the information upon which the claim is based") (internal punctuation omitted). Petitioner had no other means of accessing this evidence

apart from requesting it from the Commonwealth. See id. ("[t]his is not a case where the parties had equal access to the information at issue"). As Petitioner took all steps available to him to obtain exculpatory information, the diligence prong is satisfied."

Appellant's Second PCRA Petition, 7/11/2023 at 39.

However, we find Appellant's reliance on the Supreme Court's decision in **Bagnall** inapposite, as our Supreme Court's decision addressed due diligence in the context of the merit of a **Brady** claim raised on direct appeal, and therefore does not guide this Court's analysis of whether Appellant has met the due diligence requirements of § 9545(b)(1) of the PCRA. **See Commonwealth v. Stokes**, 598 Pa. 574, 580 (Pa. 2008)(holding "[T]he law is clear that neither of the statutory exceptions to the timeliness requirement can begin with a discussion of the merits of a Brady claim; rather, Appellant must begin with a discussion of why the instant petition was timely filed. As this Court has explained, the latter inquiry is separate and distinct from the former. **See Abu-Jamal**, **supra** at 1268 (noting that the merits of an underlying Brady claim is not relevant to resolving a timeliness issue under either § 9545(b)(1)(i) or (ii)))." Appellant revisits and expands this argument on appeal, presenting two arguments in support of his proposition that his pre-trial discovery request alone is sufficient to establish that his second petition is timely.

First, Appellant contends that because, pursuant to **Brady** and its progeny, it is incumbent upon the Commonwealth to produce all material evidence, either in response to a defendant making a formal pre-trial

discovery request, or indeed even absent any request at all, and there is no obligation under **Brady** for the accused to make any affirmative effort to discover evidence not produced by the Commonwealth, a petitioner invoking any exception under the PCRA relative to a claim premised on **Brady** material may demonstrate due diligence even where they have taken no action. Appellant's Brief at 47-51.

In essence, while he acknowledges that, pursuant to § 9545(b)(1)(i) and (ii), and **Breakiron** and its progeny, he is required to show that he could not have uncovered the basis to his claims sooner through the exercise of due diligence to successfully invoke either exception to the PCRA time bar, the requirement is a nullity so long as the petitioner raises a **Brady** claim, because the accused have no obligation to seek out **Brady** material. This argument is untenable in light of controlling Pennsylvania Supreme Court precedent. **See Abu-Jamal**, **supra** at 228 ("Although a **Brady** violation may fall within the governmental interference exception, the petitioner must plead and prove the failure to previously raise the claim was the result of interference by government officials, *and* the information could not have been obtained earlier with the exercise of due diligence.")(*emphasis added*); **See also Stokes**, **supra**. If it were the case that an appellant presenting a well-pled **Brady** claim could satisfy the due diligence requirement of any exception to the PCRA by pointing to the Commonwealth's outstanding obligation to produce material evidence, these holdings would be meaningless. Thus, his first argument is

meritless; this Court will not adopt the proposition that a requirement to act exists but is satisfied by taking no action.

In the alternative, Appellant, citing the concurring opinions of Justice Wecht and Justice Donahue in **Commonwealth v. Towels**, 300 A.3d 400, 418-430 (Pa. 2023), contends that he has successfully invoked the governmental interference exception because our Supreme Court's decision in **Breakiron** was wrongly decided and the plain text of the PCRA imposes no due diligence requirement relative to § 9545(b)(1)(i). Appellant's Brief at 52-55. However, this Court is "bound by existing precedent under the doctrine of *stare decisis* and continues to follow controlling precedent as long as the decision has not been overturned by our Supreme Court." **Commonwealth v. Reed**, 107 A.3d 137, 143 (Pa. Super. 2014). As neither **Breakiron** nor **Abu-Jamal** have been overturned, we are bound and we must conclude that § 9545(b)(1)(i) does indeed require Appellant to show he could not have uncovered the basis for his claim sooner through the exercise of due diligence.

Thus, we undertake to review Appellant's petition itself to ascertain whether any facts pled carry his burden. To begin, Appellant's petition avers that he became aware of the underlying basis of the claims set forth in the petition on July 12, 2022, 364 days prior to filing, on which date his counsel discovered the documents at issue during review of the Commonwealth's case file. Appellant's Second PCRA Petition, 7/11/2023 at 4. However, Appellant's petition is virtually silent concerning the sequence of events leading to that

discovery. First, his petition does not explain what prompted him to retain an attorney to review these files. It only avers that instant PCRA counsel represented Appellant at the time of his filing his petition for allowance of appeal, which was denied in February of 2022, and, as of the time of filing the instant PCRA petition, counsel represented Appellant in concurrent federal habeas corpus proceedings. It is unclear from the petition whether counsel's representation had been interrupted at any point.

Further, the petition does not indicate at which point counsel initially requested access to the Commonwealth's file, nor when she obtained either access to or copies of the file for her review, nor whether any of Appellant's prior counsel attempted to gain access to it, or were granted access to it, at any point in the extensive post-conviction litigation which occurred in this case. Finally, the petition does not indicate what efforts in addition to a request, if any, were made by counsel in order to gain access to the file, nor whether counsel's efforts were frustrated or otherwise delayed in any way.

We note again that, as observed by the trial court, the Philadelphia Office of the District Attorney maintained an open file policy since October of 2020, which Appellant does not contest on appeal. Trial Court Opinion 12/3/2024 at 9, fn. 5. If indeed there was a reason that either Appellant or his counsel could not have requested access to the Commonwealth's file earlier, and thereby uncovered the basis for his claims prior to July of 2022,

it simply was not pled in his petition. As Appellant bore the burden of doing so, his petition is untimely and not subject to any exception.

As neither this Court nor the PCRA court have jurisdiction over an untimely PCRA petition, we find Appellant's first issue is moot. We will not remand this matter for further proceedings in a court without jurisdiction to consider the merits thereof, without regard to any irregularities in the formation of its earlier decision.

For the foregoing reasons, we find that Appellant has failed to plead and prove that the information upon which his claims are premised could not have been obtained by Appellant earlier through the exercise of due diligence, and as such his petition is untimely. As the PCRA court would have no jurisdiction over Appellant's untimely petition, remand would serve no purpose, and thus we quash the appeal as it relates to the PCRA court's notice of intent to dismiss pursuant to Pa.R.Crim.P. 907.[2]

_____

[2] As the PCRA Court lacks jurisdiction over Appellant's untimely-filed second PCRA petition, we deny Appellant's August 27, 2025, application for remand to raise a novel claim based on newly discovered evidence and note that Appellant is free to raise this new claim in a subsequent PCRA petition following resolution of the instant appeal. *See Commonwealth v. Lark,* 560 Pa. 487, 746 A.2d 585, 588 (Pa. 2000) (footnote omitted), overruled in part by *Commonwealth v. Small*, 238 A.3d 1267 (Pa. 2020)("when [an appellant's] PCRA appeal is pending before a court, a subsequent PCRA petition cannot be filed until the resolution of review of the pending PCRA petition by the highest state court in which review is sought, or upon the expiration of the time for seeking such review"); *Commonwealth v. Beatty*, 207 A.3d 957, 963 (Pa. Super. 2019)("[w]here a prior petition is pending on appeal, a subsequent petition must be filed within the time limits set forth in

*(Footnote Continued Next Page)*

Order affirmed in part; appeal dismissed in part as moot; application for remand denied.

Judgment Entered.

*Benjamin D. Kohler*

Benjamin D. Kohler, Esq.
Prothonotary

Date: 1/16/2026

---

[42 Pa.C.S. §] 9545(b)(2) *as measured from the date of the order that finally resolves the appeal in the prior petition, because that date is the first date the claim could be presented*.")(citations omitted, emphasis added).